ANN BRABSTON, PLAINTIFF IN ERROR, *v.* TOBIAS GIBSON.

Where promissory notes were executed in Louisiana, but made payable in Mississippi, and indorsed in Mississippi, and the indorsee sues in Louisiana, the law of Mississippi, and not that of Louisiana, must be the law of the case.

By the law of Mississippi, where the indorsee sues the maker, the "defendant shall be allowed the benefit of all want of lawful consideration, failure of consideration, payments, discounts, and set-offs, made, had, or possessed against the same, previous to notice of the assignment."

Where the notes were originally given for the purchase of a plantation, which plantation was afterwards reclaimed by the vendor (under the laws of Louisiana and the deed), and, in the deed of reconveyance made in consequence of such reclamation, the plantation remained bound for the payment of these notes, these facts do not show a "want of lawful consideration, failure of consideration, payment, discount, nor set-off," and consequently furnish no defence for the maker when sued by the indorsee.

The fact, that the notes were indorsed "*Ne varietur*" by the notary, did not destroy the negotiability of the notes.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for Louisiana.

Ann Brabston was a citizen of Mississippi, and Gibson of Louisiana.

The facts in the case were somewhat complicated. There was a "case agreed" in the Circuit Court, which is inserted in this statement; but in consequence of a reference to long deeds, which are made a part of the case agreed, it may be proper to collect the facts stated in those deeds, and throw them into the form of a continued narrative.

The case was this.

On the 16th of May, 1837, William Harris, a citizen of Mississippi, residing in Adams County in that State, became indebted to the heirs of Epheus Gibson, in the sum of $11,000, bearing eight per cent. interest till paid.

On the 24th of March, 1838, Harris purchased from Tobias Gibson, the defendant in error, who was then the owner of a plantation of 1,219 acres in the parish of Concordia in Louisiana, and of twenty-four slaves thereon, an undivided moiety of the said plantation and slaves, whereby he and Gibson became tenants in common thereof.

On the 11th of March, 1839, Harris became indebted to the Agricultural Bank of Mississippi, in the sum of $25,272.02, for which he gave his two promissory notes to the said bank, both dated on that day, one of them for $6,398.55 payable on the 1st of February, 1840; the other of them for $18,873.47, payable on the 1st of April, 1840.

On the 16th of March, 1839, Harris executed a mortgage of his undivided moiety of the plantation and slaves purchased

from Gibson to the Agricultural Bank of Mississippi, to secure the payment of these two notes.

On the 24th of December, 1839, Harris executed a second mortgage of the same property to the heirs of Epheus Gibson, to secure the payment of the debt due to them.

On the 24th of December, 1839, Harris and wife resold to Tobias Gibson the undivided moiety of the plantation and slaves (subject to these two mortgages), for the sum of $70,000, which was to be thus paid by Gibson. He was to pay off the two mortgage debts in the following manner: — The two notes held by the Agricultural Bank of Mississippi in four annual instalments during the years 1840, 1841, 1842, and 1843; the debt to the heirs of Epheus Gibson in three annual instalments during the years 1844, 1845, and 1846 (which arrangement and postponement of payments by the bank and the heirs of Epheus Gibson Harris became responsible for); and for the balance of the $70,000 of purchase-money, viz. $29,510.79, he, Gibson, gave Harris (then being a citizen and resident of Mississippi) four promissory notes, all dated at the parish of Concordia, on the 24th of December, 1839, and payable at the Agricultural Bank of Mississippi, viz.: —

One for $2,000, payable on the 1st of February, 1844.

One for $6,000, payable on the 1st of February, 1845.

One for $7,000, payable on the 1st of February, 1846.

One for $14,510.79, payable on the 1st of February, 1847.

But he, Gibson, was to have the liberty of extending the time of the payment of each note one year more, on payment of eight per cent. interest. The said four notes were each respectively marked " *Ne varietur* " by the parish judge, at the the time of the act of sale, to identify the same therewith.

As security for the fulfilment of the terms of purchase, Gibson, in the act of sale, specially mortgaged and hypothecated, in favor of Harris, the property so purchased; and he also covenanted that it was " a sale in which the power or right of redemption was specially reserved in favor of the vendor (Harris), for the period of ten years from the date of the act of sale, to be by him exercised at any time within the said period of ten years, agreeably to the provisions of the laws of the State of Louisiana."

Those provisions are the following (Civil Code of Louisiana, § 2031, § 2545 to § 2566): —

§ 2031. " A sale may be made conditioned to be void, if the vendor chooses to redeem the property sold."

§ 2545. " The right of redemption is an agreement or petition, by which the vendor reserves to himself the power of taking back the thing sold by returning the price paid for it."

§ 2546. " The right of redemption cannot be reserved for a time exceeding ten years."

§ 2550. " A person having sold a thing, with the power of redemption, may exercise the right against a second purchaser, even in case such right should not have been mentioned in the second sale."

§ 2553. " The person who purchases an estate under a condition of redemption has the fruits until the vendor exercises his right of redemption."

§ 2565. " The vendor who exercises the right of redemption is bound to reimburse to the purchaser, not only the purchase-money, but also the expenses resulting from the necessary repairs, those which have attended the sale, and the price of the improvements which have increased the value of the estate."

§ 2566. " When a vendor recovers the possession of his inheritance, by virtue of the power of redemption, he recovers it free from any mortgages or encumbrances created by the purchaser, provided full possession be recovered within the ten years, as provided by § 2546."

On the 21st of January, 1840, Harris, then being a citizen and resident of Mississippi, executed a promissory note (for what particular consideration does not appear), dated at Natchez, for $ 6,000, payable to Ann Brabston, the plaintiff in error, who was also a citizen and resident of Mississippi, twelve months after date, and delivered it to her there.

On the same day, Ann Brabston gave Harris a receipt, also dated at Natchez, acknowledging that she had received from him two of the above stated notes of Gibson, viz. that for $ 6,000, payable on the 1st of February, 1845, and that for $ 7,000, payable on the 1st of February, 1846, " to be held by me as collateral security for the payment of the note of William Harris to me," executed the same day.

The indorsement, transfer, and delivery of these notes by and between Harris and Brabston, were made at Natchez, in Mississippi. The whole transaction was without any notice, knowledge, or consent, on the part of Gibson.

On the 21st of January, 1841, the note of Harris and Brabston for $ 6,000 (as collateral security for which the two notes of Gibson of $ 6,000 and $ 7,000 were given to her) became due; it was not presented for payment, renewed, or protested (so far as appears); no notice thereof, or that the said note or that the two other notes were held by Brabston, was given to Gibson; and Brabston then was, and at all times since has continued to be, the holder of the note of Harris, dated the 21st of January, 1840.

On the 18th of September, 1841, Harris claimed his right of redemption, and thereupon Gibson and wife reconveyed to him, by an authentic act, dated that day, all the property conveyed to him by Harris on the 24th of December, 1839, for the consideration of $70,000, which he acknowledges to have received in the manner following, viz.: — It was recited in the said act of reconveyance, that the two mortgage debts to the Agricultural Bank of Mississippi, and to the heirs of Epheus Gibson, still remain unpaid; and Harris covenanted to assume the payment thereof himself, and to guarantee Gibson against any personal liability therefor; as to the remaining part of the said $70,000, viz. the $29,510.79, for which Gibson had given his four promissory notes to Harris, the first and last of them, those for $2,000 and $14,510.79, were actually surrendered and returned, and as to the remaining two, for $6,000 and $7,000, it was stipulated that "they are not returned to the said Gibson at the passing of this act, but the said Harris hereby stipulates and guarantees the return and cancelling of said notes; and, to secure the same, hereby specially mortgages in favor of said Gibson all the property" then conveyed, with the growing crops.

On the 8th of November, 1841, Gibson produced before the parish judge of Concordia the two notes for $2,000 and $14,510.79; and the mortgage granted for the amount thereof was thereupon declared by the said judge to be so far annulled.

On the — of March, 1843, Harris was declared a bankrupt by a decree of the District Court of the United States for the Louisiana District, under the bankrupt law of the United States; and, by further proceedings in that court, obtained a final discharge and certificate.

On the 14th of February, 1846, Brabston commenced this suit against Gibson, in the Circuit Court of Louisiana, to recover the whole amount of the two notes in question, amounting to $13,000, with interest and costs.

The answer of Gibson was as follows.

" The Answer of Tobias Gibson to the Petition of Ann Brabston, exhibited against him in the Court aforesaid.

" This defendant denies all and singular the matters and things set forth and alleged in plaintiff's petition, except such as are hereafter specially confessed and admitted. Defendant admits the execution of the two notes sued on, and that he signed the same and delivered them to William Harris, to whose order they are payable, at the time of their execution. But defendant wholly denies that plaintiff is the owner thereof, or entitled

to sue thereon.   Further answering, defendant states that both the notes sued on were executed and given to the said William Harris, in sole consideration of the purchase, and for a part of the price, of one undivided half of a certain plantation, and certain slaves thereon, purchased by said defendant from said Harris, on the 24th day of December, 1839 ; which purchase, as well as execution and delivery of said notes, was evidenced by an authentic act of sale, passed before George W. Keeton, parish judge of the parish of Concordia in this State, on the day and year last aforesaid, and a duly certified copy of which act is hereto annexed, and made a part of this answer.

"Defendant further alleges, that in said act of sale said vendor, Harris, specially stipulated for and reserved to himself the right of redemption of the property so sold for the period of ten years from the date of said act, as will more fully appear by reference thereto, and said notes sued on were identified with said act, and marked *Ne varietur* by the parish judge, as appears upon their face, as also in said act.

"Defendant further alleges, that afterwards, to wit, on the 18th day of September, 1841, and long before the maturity of either of the notes sued on, the said William Harris claimed the right of redemption, so reserved by him in the act of sale above mentioned, and according to the stipulations and provisions set forth and contained in said act; wherefore, and in accordance with said claim by said Harris, and of the stipulations of said original act of sale, this defendant did, on said 18th day of September, 1841, at the parish of Concordia, and in conjunction with his wife, Amanda Fletcher, by authentic act passed before James Dunlap, judge and *ex officio* notary public in and for said parish of Concordia, resell and reconvey said property conveyed to him by said first-mentioned act to the said Harris, according to the rights and claims of said Harris to redeem the same.

"And defendant further states, that by said last-mentioned act said Harris did, in part consideration thereof, cancel the two notes sued on, and wholly discharge and release defendant from all liability therefor; all of which will more fully appear by reference to an authenticated copy of said last-mentioned act, which is hereto annexed and made part of this answer.

"Defendant further states, that both said acts above mentioned were, upon their execution, respectively, duly recorded in the proper office.   And so said defendant says that said notes, by virtue of said claim of the right of redemption, and of the reconveyance made in consequence thereof by this defendant and wife to said Harris, and by virtue of the stipulations contained in said act of resale, and by operation of law, were

wholly discharged, and this defendant released from all liability therein.

" Further answering, defendant says that said notes sued on were not transferred to said plaintiff *bonâ fide* in the ordinary course of business, nor did she obtain possession thereof as owner, nor is she the owner thereof; but said notes were delivered to said plaintiff, and received and held by her, as collateral security for the payment of a certain note, drawn by said Harris, and held by said plaintiff, for the sum of six thousand dollars, dated Natchez, 21st January, 1840, and payable twelve months after date ; that said plaintiff has never instituted suit upon said last-mentioned note, nor made any attempt to enforce the collection of the same.

" Defendant further states, that said notes were so deposited with said plaintiff, as collateral security as aforesaid, without his knowledge or consent, and in fraud of his rights, and that, he had no notice whatever that said plaintiff held said notes until long after his reconveyance to said Harris as aforesaid, nor until long after he had transacted with said Harris in relation to said notes as aforesaid, and had been wholly released and discharged therefrom.

" Defendant further states, that said notes are payable in the State of Mississippi, and governed in their obligation and validity by the laws of said State, and that the transfer or pledge of said notes, made by said Harris to said plaintiff, as collateral security for the payment of his own note as aforesaid, was also made in the State of Mississippi, and is governed by the laws of said State. And defendant avers, that by the laws of said State of Mississippi, upon the redemption of said Harris of the property, for a portion of the price of which said notes were given as aforesaid, and upon the release and discharge of said notes by said Harris, as aforesaid, said notes were wholly satisfied and discharged, nor can said plaintiff, by the laws of said State, maintain any action thereon.

" Wherefore said defendant prays that plaintiff's claim be rejected, with costs, &c., and that a jury trial be awarded in this case, and for all other relief."

When the cause came on for trial, the following case was agreed upon.

## *Case Agreed.*

### " Ann Brabston *v.* Tobias Gibson.

" 1st. The defendant, Tobias Gibson, on the 24th day of December, 1839, executed the promissory notes sued on in this

case, under the circumstances and for the consideration set forth in the deed of sale executed to him by the payee of said notes, William Harris, a copy of which act or deed of sale is hereto annexed, and forms a part of this case, as also the said two notes, which are respectively marked A, B, and C.

"2d. On the 21st of January, 1840, the payee of the said two notes, William Harris, being then the holder thereof, indorsed and delivered the same to Mrs. Ann Brabston, the plaintiff, as collateral security, to secure the payment of the said Harris's note to the said Ann Brabston, dated on the said 21st of January, 1840, and payable twelve months after date, for the sum of six thousand dollars, and on the same notes mentioned in a receipt from the said Ann to the said Harris, under date of the said 21st of January, 1840, which is hereto annexed, and makes part of this case, and marked D.

"3d. On the 18th of December, 1841, the said defendant, Tobias Gibson, did reconvey to the said William Harris all the property mentioned in the act of sale from Harris to the said Gibson, of the date of the 24th of December, 1839, before mentioned and referred to, and took back and cancelled all the notes mentioned in said act of December, 1839, except the two notes now sued on, and in and by the said act reserved to himself a mortgage to secure him against liability on said two notes, as is set forth in said act of reconveyance, which is hereto annexed and marked E, and makes part of this case.

"4th. The plaintiff is now the holder of the note of the said Harris for six thousand dollars, dated the 21st of January, 1840, and payable twelve months after date, and which is the same note mentioned in the receipt from said plaintiff to said Harris, of the 21st of January, 1840, before referred to and made part of this case, and the said note is now in the hands of the plaintiff and unpaid, and is hereto annexed and made part of this case, and marked F.

"5th. The mortgage reserved by the defendant, Gibson, in the act of reconveyance from him to the said Harris, of the 18th of September, 1841, to secure the return and cancelling of the said two notes, is duly recorded and subsisting and unreleased, as appears by the certificate of the recorder hereto annexed, marked G, and made part of this case.

"6th. The payee of the said two notes, William Harris, was, on the — day of March, 1843, declared a bankrupt by a decree of the District Court of the United States for the Louisiana District, under the bankrupt law of the United States, and by the further proceedings in bankruptcy before said court has obtained his final discharge and certificate.

23 *

"7th. Harris, the payee, resides in the State of Mississippi, and the notes sued on were indorsed and transferred to plaintiff, and the receipt given by her therefor, made and executed by her at Natchez, in the State of Mississippi, in which State said notes are payable. If on this case, as herein stated, the law be for the plaintiff, then judgment to be entered for the said plaintiff for the sum of six thousand dollars, with ten per cent. per annum interest, from the 21st of January, 1840, till paid; and if the law be for the defendant, then judgment to be entered for the defendant.

"PRENTISS & FINNEY, *Defendant's Attorneys.*
ROB. MOTT, *for Plaintiff.*"

Upon this agreed case, the Circuit Court gave judgment for the defendant, Gibson; whereupon the plaintiff sued out a writ of error, and brought the case up to this court.

Whilst the cause was pending, Ann Brabston died, and James M. Brabston, her administrator, was substituted in her place.

It was argued by *Mr. Johnson* (Attorney-General), for the plaintiff in error, and by *Mr. Gilpin* and *Mr. Walker,* for the defendant in error.

For the plaintiff in error, it was contended that judgment ought to have been rendered for the plaintiff in error. Because, —

1. That, independent of the statute of Mississippi, the plaintiff in error was entitled to a judgment, and that the *ne varietur* on the notes does not restrain their negotiability, or make it the duty of the indorsee to inquire into the consideration. Fusilier *v.* Bonin, 12 Martin, 235; Canfield *v.* Gibson, 1 Martin, N. S. 145; Abat *v.* Gormley, 3 Louis. 241; King *v.* Gayoso, 8 Martin, N. S. 370.

2. That the statute has no operation on the notes, the suit having been instituted and prosecuted in Louisiana, its operation being confined to actions commenced and sued upon promissory notes, &c., in Mississippi. Howard & Hutchinson, Statutes, 373, 374; Bank of United States *v.* Donnally, 8 Pet. 361, 372, 373.

3. That if the statute does apply to notes given in Louisiana and made payable in Mississippi, it affords no defence in this case, inasmuch as there was neither a want of lawful consideration, nor a failure of consideration, nor a payment, discount, or set-off, within the true meaning of the statute.

4. That if there was a want of consideration, &c., the statute affords no defence, inasmuch as the defendant had notice of the

assignment of the notes, within the true meaning of the statute. The Ploughboy, 1 Gall. 41; Brush *v.* Ware, 15 Pet. 111, 113.

For the defendant in error it was contended, —

1. The right of recovery by the assignee is governed by the law of Mississippi, where her contract was made, and was to be executed.

These notes, though drawn in Louisiana, were indorsed by Harris to Brabston in Mississippi (Record, § 7 of Case Agreed), and they were payable in Mississippi. The contract, therefore, between the maker (Gibson) and the indorsee (Brabston) was made in Mississippi, and is governed by its laws. Story's Confl. of Laws, §§ 272, *a,* 278, *a,* 280, 281, 316, *a,* 354; Story's Prom. Notes, §§ 171, 172; 2 Kent's Com. 458; Slacum *v.* Pomery, 6 Cranch, 221.

Besides, it was to be executed in Mississippi, — the notes were to be paid there. The law of Mississippi, therefore, regulated in every respect the mode and circumstances of payment, — the rights of the parties paying or to be paid. Story's Promissory Notes, § 165; 2 Kent's Com. 461; Robinson *v.* Bland, 2 Burr. 1078; Bank of Washington *v.* Triplett, 1 Peters, 34; Boyce *v.* Edwards, 4 Peters, 123; Musson *v.* Lake, 4 Howard, 278; Thompson *v.* Ketchum, 4 Johns. 288; Fanning *v.* Consequa, 17 Johns. 518; Shewell *v.* Hopkins, 1 Cowen, 108; Prentiss *v.* Savage, 13 Mass. 23; Vidal *v.* Thompson, 11 Martin, 23; Andrews *v.* Herriot, 4 Cowen, 508, 510; Cox *v.* United States, 6 Peters, 172, 203.

2. The laws of Mississippi, which affect and regulate the rights of these parties, provide that, until the maker (Gibson) received notice of the assignment of the notes in question by the payee (Harris) to the assignee (Brabston), he was entitled, notwithstanding the assignment, to claim the benefit, against the assignee, of every payment, discount, or set-off, which could legally exist between himself and the payee.

Howard and Hutchinson's Miss. Digest, p. 373, §§ 12, 13: — " All bonds, obligations, single bills, promissory notes, and all other writings, for the payment of money or any other thing, shall and may be assigned by indorsement, whether the same be made payable to the order of the assigns of the obligee or payee or not; and the assignee or indorsee may sue in his own name, and maintain any action which the obligee or payee might or could have sued or maintained thereon previous to assignment; and in all actions commenced or sued upon any such assigned bond, obligation, bill single, or promissory note, or other writing as aforesaid, the defendant shall be allowed the

benefit of all want of lawful consideration, failure of consideration, payments, discounts, and set-offs, made, had, or possessed against the same, previous to notice of the assignment, any law, usage, or custom in anywise to the contrary notwithstanding, in the same manner as if the same had been sued and prosecuted by the obligee or payee therein; and the person or persons to whom such instruments so payable are assigned may maintain an action against the person or persons who shall have indorsed or assigned the same, as in cases of inland bills of exchange; provided, that where any debt shall be lost by the negligence or default of the assignee, the assignor or assignors shall not be liable, any such assignment notwithstanding."

§ 13 provides that, where a surety or indorser pays an obligation or protested note, in default of the obligor or maker, the obligation or note shall be assigned to him, and he shall have a right of action thereon against the principal debtor.

In the case of Parham *v.* Randolph, 4 How. Miss. 453, Randolph sold land in Louisiana and received in payment certain notes "made payable at the Agricultural Bank of Mississippi," on which Parham was indorser. The notes were assigned by Randolph to the Planters' Bank, who recovered judgment against the indorser. The title of Randolph to the land proved bad, and his vendee was evicted. The indorser, Parham, prayed for an injunction and rescission of the contract, which was refused by the inferior court, and this appeal taken. It was contended that the assignee, the Planters' Bank, being an innocent holder, could not be affected by failure of title; but the Court of Errors (Sharkey, C. J.) said, — "This position is untenable. The statute (of Mississippi) gives the maker the same defence against the holder that he had against the payee of the note. These notes were made payable at the Agricultural Bank."

3. The evidence in the record shows, that on the 18th of December, 1841, more than four years before either of the notes of Gibson, which were assigned by the payee (Harris) to Brabston, had become due, and before this action was commenced upon them, they were both completely annulled and discharged.

It is shown by the record (§ 1 of the Case Agreed) that the notes were executed by Gibson as a part of the purchase-money and consideration of a tract of land and some negroes bought by him from the payee (Harris), and that in the act of sale it was "expressly stipulated between the parties (Gibson and Harris), that it was a sale in which the right of redemption was specially reserved in favor of the vendor (Harris), for the

period of ten years from the date of the sale (24th December, 1839), to be exercised by him at any time within that period, agreeably to the provisions of the laws of the State of Louisiana." (These laws are quoted in the statement of the case.)

It is shown by the record, that Harris did, on the 18th of September, 1841, exercise his right of redemption; and by the Case Agreed, that Gibson did, on that day, reconvey to him all the property sold, and acknowledged to have received back the whole purchase-money and consideration, of which the amount of the two notes now sued on was declared to be a portion; and that all the promissory notes given at the time of the original sale had been actually taken back and were cancelled, except the two notes for $ 13,000 now sued on, which " were not then returned to Gibson, but Harris stipulated and guaranteed the said two notes should be returned to Gibson and cancelled, and to secure the performance of this he mortgaged all the property in favor of Gibson."

4. The evidence in the record shows, that neither at the time when the notes in question were assigned by Harris to Brabston, at Natchez, namely, the 21st of January, 1840, nor at the time when Harris exercised his right of redemption and Gibson reconveyed the property, namely, the 18th of December, 1841, nor before the time when this action was commenced, namely, the 14th of February, 1846, had any notice of the assignment of the notes in question, direct or implied, been given to or received by the defendant, Gibson, either from the payee (Harris) or the assignee (Brabston).

No *direct* notice is averred, or offered to be proved by the plaintiff, or appears upon the record. It is denied by the defendant, Gibson, who avers that the assignment was without his knowledge or consent, and in fraud of his rights, and that he had no notice of it whatever, until long after his reconveyance of the property to Harris, and his release and discharge from the notes in question.

No *implied* notice, if such were sufficient to contradict the positive requisitions of the statute of Mississippi, can be inferred from any evidence in the record. The circumstance relied upon in argument, namely, that the notes in question were not cancelled and delivered up to the defendant at the time of the reconveyance of the property, and that he reserved a mortgage to secure their cancellation and delivery to him, affords no ground for such an inference.

Allein *v.* The Agricultural Bank, 3 Smedes & Marsh. 57.

This was a suit by the assignee of a note against the maker, who had no notice of the assignment, and had paid the note

without its being delivered up, taking a bond conditioned for its subsequent delivery. It was held by the Court of Errors, that a payment of a note without its delivery, where the maker had no notice of its transfer, is good; and is protected by the operation of the statute of Mississippi. The fact of its non-delivery at the time might possibly raise a presumption that it had been assigned; but the proof of notice to the maker of the assignment, is a matter requiring a higher degree of evidence than that of presumption. The obligation of indemnity extended merely to a future delivery of the note. The fact of taking indemnity might be considered as a presumptive notice of assignment, but still of no higher grade of evidence than that which arises from the non-delivery of the note, and, so far as it was intended as a protection against payment in the hands of other holders, was unnecessary; because such payment could not be enforced by them, by the terms of the statute, without proof of notice of the assignment to them. The statute allows the defendant, in all actions upon such instruments, whether negotiable or not, the benefit of all want of legal consideration, failure of consideration, payments, discounts, profits, made, had, or possessed, against the same previous to notice of assignment. This has the effect to change the rule in many particulars as established by the law merchant. The assignee takes the note, subject to all objections and incumbrances that appertain to it, of the kind described in the statute, up to the time of notice of the assignment.

5. The grounds upon which it is attempted to withdraw this contract, and the rights of the defendant (Gibson), in this action, from the provisions of this statute of Mississippi are not sustained, either by the evidence in the record, or the principles established by legal decisions.

There is not a single circumstance to warrant the allegation of fraudulent coöperation between the maker (Gibson) and the payee (Harris) against the assignee (Brabston). On the contrary, if there is evidence of fraud, it is in the withholding, by the assignee (Brabston), of all notice of the assignment, which was contrary to law; in neglecting also to give Gibson any notice of the non-payment at maturity of Harris's own note of $ 6,000 (for which the notes in question were held merely as collateral security); and in adopting no proceedings whatever against her principal debtor. These acts, whether of fraud or gross negligence, deprived Gibson of the opportunity to protect himself, at the time of reconveying the property, and also at the time of Harris's bankruptcy.

There is nothing in the form or substance of the notes in

question which exempts the party who commences an action upon them from the provisions of the statute of Mississippi. The indorsement of " *Ne varietur* " did not give, as is alleged, " increased confidence and additional value " to their negotiable character ; on the contrary, it gave notice to the assignee that they were connected, when made, with other transactions, into which, receiving them as she did, not " in the usual course of business," but as collateral security, she was bound to inquire. The cases of Fusilier *v.* Bonin, 12 Martin, 235, Canfield *v.* Gibson, 1 New Series, 145, and Abat *v.* Gormley, 3 Louis. .241, are decisions, not of the law of Mississippi, but of Louisiana, nor do they go further than to hold that the mere indorsement of " *Ne varietur*," unaccompanied with other circumstances, does not destroy in Louisiana the negotiable character of bills or notes, taken " in the usual course of business." Indeed, Fusilier *v.* Bonin goes to show that, if the notarial act accompanying the note marked " *Ne varietur* " exhibits a right existing in the maker to cancel the note, the holder could not recover. In State Bank *v.* Orleans Navigation Co., 3 Louis. 294, 304, a third party was held bound to notice a defect disclosed by an instrument referred to in the bill.

The facts that the assignment of the notes was as a pledge or collateral security, and that the reconveyance of the property was subsequent to the assignment, though in accordance with the stipulation entered into, by a public notarial act, between the parties to the notes at the time they were made, are equally unavailing as grounds of exemption from the provisions of the statute of Mississippi.

The allegation that the rights of the assignee (Brabston) are to be governed by the law, not of Mississippi, but of Louisiana, because the notes were accompanied by a mortgage of property in Louisiana ; and that, if so governed, the assignee could recover in this action against the maker, upon the principles of the " law merchant," free from all equities he might have, cannot be sustained in either respect.

It has already been shown, that, although the notes were originally made in Louisiana, they were not payable there, and therefore not governed by her laws. If they were, the " law merchant " would not authorize the recovery by the assignee.

Because the notes of which Brabston now seeks to recover the whole amount of $ 13,000 were not taken in the usual course of business, or in payment or extinguishment of a debt, but merely as collateral security for a note of $ 6,000. Collins *v.* Martin, 1 Bos. & Pull. 651 ; Coddington *v.* Bay, 20 Johns. 651 ; Depeau *v.* Waddington, 6 Whart. 232 ; Petrie *v.* Clark,

11 Serg. & Rawle, 377; Brooks v. Whitson, 7 Smedes & Marsh. 520; Homes v. Smith, 16 Maine, (4 Shep.) 180; Norton v. Waite, 20 Maine, (2 App.) 177; Swift v. Tyson, 16 Pet. 1; Stalker v. McDonald, 6 Hill, 93.

Because the terms of the receipt on which the notes of Gibson were assigned to Brabston place him in the position merely of a guarantee to her, to the extent of $ 13,000, for the payment by Harris of his note to her for $ 6,000; and therefore it is incumbent on her, before resorting to the guarantee, to show notice given to Gibson of Harris's failure to pay the guaranteed debt, prompt proceedings against Harris for its recovery, and no injury to Gibson by reason of any neglect therein. The evidence in the record exhibits no proof of such notice or proceedings; but, on the contrary, it shows the surrender by Gibson, from want of such notice, of property sufficient for his protection; the possession by Harris of large property when the guaranteed debt became payable; and his insolvency and discharge before Gibson's knowledge of a claim against him. French v. Bank of Columbia, 4 Cranch, 161; Douglass v. Reynolds, 7 Pet. 126; 2 Starkie on Evidence, 266; Phillips v. Astling, 2 Taunt. 206; Cammidge v. Allenby, 6 Barn. & Cress. 383; U. States v. Hillegas, 3 Wash. C. C. 75; Ramsay v. West. Bank, 2 Penn. 205; Johnston v. Chapman, 3 Penn. 19; Isett v. Hoge, 2 Watts, 129; Thomas v. Callihan, 5 New Series, 181; Styles v. McNeill, 6 New Series, 296; Mitchell v. Dall, 2 Har. & Gill, 75; Read v. Cutts, 7 Greenl. 186.

Because it is neither proved by the record, admitted, nor agreed, that the notes on which this action is brought were presented for payment, or that payment thereof was demanded, either at the Agricultural Bank of the State of Mississippi, or on the day of the maturity thereof, or that any notice of presentation, or of non-payment thereof, was given to the said Gibson or Harris. Story on Promissory Notes, §§ 227 – 230; 3 Kent's Com. 97, 99; Rowe v. Young, 2 Brod. & Bingh. 165; U. S. Bank v. Smith, 11 Wheat. 171; Wallace v. McConnell, 13 Pet. 136; Mellon v. Croghan, 3 New Series, 423, 431; Smith v. Robinson, 2 Louis. 405; Morton v. Pollard, 10 Louis. 552; Warren v. Allnut, 12 Louis. 454.

Mr. Justice McLEAN delivered the opinion of the court.

This writ of error is brought to review a judgment of the Circuit Court for Louisiana.

The action was founded on two promissory notes given by Tobias Gibson, and dated the 24th of December, 1839, in which he promised to pay to William Harris, for value re-

ceived, at the "Agricultural Bank of the State of Mississippi," in one note, six thousand dollars, the 1st of February, 1845, and in the other, seven thousand dollars, the 1st of February, 1846. These notes were given in part consideration for a plantation and slaves in Louisiana, sold by William Harris to Gibson, to secure the payment of which and other notes a mortgage was executed on the property. The words "*Ne varietur*" were indorsed on the notes to identify them with the sale of the estate.

On the 21st of January, 1840, these notes were assigned, in the State of Mississippi, to the plaintiff, as collateral security for the payment of a note to her of the same date, given by Harris, who was a citizen of Mississippi, for six thousand dollars, payable twelve months after date. In the sale of the above property there was reserved to the vendor a right to repurchase it within ten years ; and it appears there was a redemption of the property at the price for which it was sold, and a reconveyance to Harris was executed on the 18th of September, 1841. Two notes on Gibson were given up as a part of the consideration for the repurchase, but the above two notes for thirteen thousand dollars, having been assigned by Gibson to the plaintiff, were not surrendered, but Harris agreed that they should be given up and cancelled, and a mortgage was executed on the property to indemnify Gibson against them. The first mortgage for the consideration money was cancelled. Harris became bankrupt, and took the benefit of the bankrupt act in 1843.

The cause was submitted to the court on the facts agreed, and a judgment was rendered for the defendant. On several grounds, the plaintiff asks the reversal of this judgment.

The notes were given in Louisiana, but they were made payable and indorsed in Mississippi ; consequently they are governed by the law of Mississippi. The law of the place where a contract is to be performed, and not the place where it was executed, applies. The indorsement of a note subjects the indorser to the obligations imposed by the law where the indorsement was made.

It is contended that, under the law of Mississippi, the defendant is not bound. The law referred to is in Howard and Hutchinson's Digest, 373, which declares that "all bonds, obligations, single bills, promissory notes, and all other writings for the payment of money or any other thing, shall and may be assigned by indorsement," &c., and the assignee may bring an action, &c., "and in all actions commenced or sued upon any such original bond, obligation, bill single, or promissory note, or other writing as aforesaid, the defendant shall be allowed the

benefit of all want of lawful consideration, failure of considera-
tion, payments, discounts, and set-offs, made, had, or possessed
against the same previous to notice of the assignment."

The only question in the case which can arise under this
statute is, whether the admitted facts constitute a defence to
the action.  The facts not being within the statute cannot be
set up as a defence under it.  They do not show "an illegal
consideration, a failure of consideration, payment, discount, or
set-off."  There was no pretence of payment of these notes in
the redemption of the property.  They were declared to re-
main in force, and to be subject to extinguishment when ob-
tained.  The case cited, of Parham *v.* Randolph, 4 How. Miss.
453, was where the note was given for land, the title to which
failed; the failure of the consideration was held a good defence
against the note in the hands of an assignee.  That case was
clearly within the statute.

These notes, being negotiable, were assigned to the plaintiff,
for a valuable consideration, without notice, prior to the act of
redemption.  That act being a voluntary one by Harris, the
assignor of the notes, it could in no respect prejudice the rights
of his assignee.  Under the laws of Louisiana, the right of re-
demption may be enforced against a purchaser of the thing
liable to be redeemed, though that fact was not named in the
second sale.  And when a vendor recovers the possession of
land, by virtue of the power of redemption, he takes it free of
all encumbrances created by the purchaser.

But these principles can have no application to negotiable
paper, though given for a thing purchased which the vendor
may redeem.  The purchaser who holds land or other property
liable to be redeemed, reconveys the property only on the pay-
ment of the consideration money.  And whether this payment
be made by returns of the notes given, in money, or in some
other manner acceptable to the parties, cannot be material.  In
the present case, it seems, Gibson was content to take a mort-
gage on the property reconveyed, to indemnify him against the
outstanding notes.

From the fact that the notes were not given up, and an in-
demnity against him having been taken, a jury might well pre-
sume that Gibson had notice of the assignment.  But this was
not important to the right of the assignee.  She stands unaf-
fected by the reconveyance.  The indorsement of the words
"*Ne varietur*" could have no effect on the notes which were
payable in Mississippi, and which were indorsed to the plain-
tiff in that State.  Nor could they have affected the negotiable
character of the notes, had they been assigned in the usual

course of business in Louisiana.    Abat *v.* Gormley, 3 Louis. 241.

These notes were assigned to the plaintiff, as collateral security, by Harris, for the payment of his note for six thousand dollars, executed at the same time, which constituted a legal transfer of the notes, for the purpose stated.    On the credit of these notes, it may be presumed, the plaintiff received the note of six thousand dollars from Harris.

If Gibson be considered as a guarantor, as contended, yet a notice was not necessary, as he received an ample indemnity against the six thousand dollars by the mortgage.    But he was not a guarantor in any sense of that term.    Harris assigned the notes as security, and, under the circumstances, he cannot complain of want of notice of his own default.

No demand of the notes, when due, at the Agricultural Bank of Mississippi, where they were made payable, was necessary. The action is against the maker of the notes, and if the money was in the bank, or if the party was there with the money to pay the notes on presentation, it is matter of defence, and consequently the demand at the bank need not be averred in the declaration, nor proved on the trial.    This question was fully considered and decided in Wallace *v.* McConnell, 13 Peters, 136.

We think the judgment of the Circuit Court must be reversed, and the cause remanded to that court for further proceedings, conformably to this opinion.

## Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Louisiana, and was argued by counsel.    On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court for further proceedings to be had therein in conformity to the opinion of this court.