### Supervisors *v.* Galbraith.

1. An act of the legislature of Mississippi, approved Feb. 10, 1860, authorized the county of Calhoun, among others, to subscribe to the capital stock of a railroad company, provided that at an election in the county, of which and of the amount to be subscribed, and in what number of instalments, twenty days' notice should be given, a majority of the qualified electors voting should be in favor of the subscription. The proposition, when first submitted, was rejected; but at a second election the vote was in favor of the subscription. An act, passed March 25, 1871, declared that the bonds issued in payment of previous subscriptions should be made payable to the president and directors of the company and their successors and assigns. The bonds were issued Sept. 1, 1871, payable to the railroad company, or bearer, ten years thereafter, at the agency of the company in the city of New York. They recite that they are issued in payment of the county subscription to the capital stock of the company, in pursuance of the said acts, and in obedience to a vote of the people of the county, at an election held in accordance therewith. In a suit on the bonds, — *Held*, 1. That the requirement that they should be made payable to the president and directors of the company, and their successors and assigns, is only directory; and that the recital therein estops the county from taking any advantage of the irregularity committed by its servants. 2. That no place of payment having been designated by the act, it was competent to make the bonds payable in New York. 3. That as in that State they could, after being assigned in blank, pass by delivery from hand to hand, and have all the properties of commercial paper, the result is the same as if they had been drawn in literal conformity with the statute. 4. That, in the absence of any prohibition in the act against more than one submission to the electors of the question of making the subscription, the second vote was not unlawful.

2. The fourteenth section of the Constitution of Mississippi, ratified Dec. 1, 1869, which declares that " the legislature shall not authorize any county, city, or town to become a stockholder in, or to lend its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a special election, or a regular election, to be held therein, shall assent thereto," is wholly prospective. It does not abrogate previous acts of the legislature conferring authority to subscribe for stock.

ERROR to the District Court of the United States for the District of Mississippi.

This was an action brought by William B. Galbraith, a citizen of Tennessee, against the board of supervisors of Calhoun County, Mississippi, on certain bonds and coupons thereto attached. The bonds are in the words and figures following, except as to the numbers and amounts, and a copy of one of the coupons is hereto annexed. They differ only as to the time of payment and the reference to the bond to which they are attached.

" *Bond No.* ——.

"COUNTY OF CALHOUN, STATE OF MISSISSIPPI.

" 500.]                                                              [500.

" Be it known that the county of Calhoun, State of Mississippi, is indebted unto and promises to pay the Grenada, Houston, and Eastern Railroad Company, or bearer, at the agency of said company in the city of New York, two years from the date hereof, five hundred dollars, lawful money of the United States of America, with interest at the rate of eight per cent per annum, payable semiannually on the first day of March and September of each year, on the presentation and surrender of the proper coupon hereto annexed.

" This bond is one of a series of bonds issued and delivered to the Grenada, Houston, and Eastern Railroad Company by Calhoun County, to meet and pay off the amount subscribed by said county to the capital stock of the railroad company aforesaid, in pursuance of an act of the legislature of the State of Mississippi, entitled ' An Act to aid in the construction of the Grenada, Houston, and Eastern Railroad,' approved Feb. 10, 1860, and of an act amendatory thereof, passed March 25, 1871, and in obedience to a vote of the people of said county at an election held in accordance with the provisions of said acts.

" In witness whereof, the board of supervisors of said county have caused the signature of the president of said board to be hereto

affixed, countersigned by the clerk, with his official seal affixed, and who have also signed the coupons hereto attached at their office in Pittsboro', this first day of September, 1871.

(Signed)          " Joel Abney,<br>" Pres't B'd of Supervisors.

" J. S. Ryan, Clerk."

" Coupon.

" United States of America :

" $4.00.]                                    [$4.00.

" The county of Calhoun will pay to the Grenada, Houston, and Eastern Railroad Company, or bearer, four dollars at their agency in the city of New York, on the first day of March, 18—, being six months' interest on bond No. ——.

. (Signed)          " Joel Abney,<br>" Pres't B'd Supervisors.

" J. S. Ryan, Clerk."

In addition to the plea of *nil debet*, the defendant filed several special pleas, all of which were demurred to. The demurrers were sustained, and judgment was rendered against the defendants. They then sued out this writ. Their assignment of errors is referred to, and the remaining facts are set forth in the opinion of the court.

*Mr. Philip Phillips* for the plaintiffs in error.
*Mr. Wiley P. Harris, contra.*

Mr. Justice Swayne delivered the opinion of the court.

The question presented for our determination in this case is as to the validity of certain bonds issued and delivered by the board of supervisors of Calhoun County, in the State of Mississippi, in payment for stock of the Grenada, Houston, and Eastern Railroad Company, for which the supervisors subscribed in behalf of the county. In the court below they filed numerous pleas, presenting the points of defence upon which they relied. The pleas were all demurred to, the demurrers were sustained, and judgment was rendered for the plaintiff. Here the assignments of error are not numerous. We shall respond as far as we deem necessary without formally restating them.

The act of Feb. 10, 1860, authorized the subscription, pro-

vided a majority of the voters of the county signified their approval. That sanction was given, and the stock was subscribed. The amendatory act of March 25, 1871, declared that when bonds were issued in payment for such stock they should be " signed by the president of the board of supervisors issuing the same, and be made payable to the president and directors of the Grenada, Houston, and Eastern Railroad Company, *and their successors and assigns*, and may be assigned, sold, and conveyed with or without guarantee of payment by said president and directors, or may be mortgaged in like manner, at their discretion, as they may deem best for the company." The bonds here in question bore date Sept. 1, 1871, and were payable to " *the Grenada, Houston, and Eastern Railroad Company, or bearer*, at the agency of said company in the city of New York, two years from date." Each bond was for $500, with interest coupons attached, which matured half-yearly. On their face is this recital: —

" This bond is one of a series of bonds issued and delivered to the Grenada, Houston, and Eastern Railroad Company by Calhoun County, to meet and pay off the amount subscribed by said county to the capital stock of the railroad company aforesaid in pursuance of an act of the legislature of the State of Mississippi, entitled 'An Act to aid in the construction of the Grenada, Houston, and Eastern railroad,' approved Feb. 10, 1860, and of an act amendatory thereof, passed March 25, 1871, and in obedience to a vote of the people of said county at an election held in accordance with the provisions of said acts."

An objection is made to the form of the bonds. It is said they should have been made payable to the railroad company and " their successors and assigns," and not to the company "*or bearer*," and it is insisted that this divergence from the prescribed formula is a fatal defect.

To this there are several answers. The statutory requirement in this particular is only directory. *Indianapolis Railroad Co.* v. *Hurst*, 93 U. S. 29 ; *Township of Rock Creek* v. *Strong*, 96 id. 271. The defect is one of form and not of substance. The irregularity was committed by the servants of the county, and the county is estopped to take advantage of it. *Bargate* v. *Shortridge*, 5 Clark, H. L. 297. The recital in the

bonds of conformity to the statutes is also conclusive. A buyer was not bound to look further. Bigelow, Estoppel, 266 ; *Commissioners of Knox County* v. *Aspinwall*, 21 How. 539 ; *Moran* v. *The Commissioners*, 2 Black, 722. No place of payment of the bonds being designated by the statute, it was competent for the supervisors to make them payable in New York. *Meyer* v. *Muscatine*, 1 Wall. 384. The law of the place of performance governed the construction and effect of the contract. *Brabston* v. *Gibson*, 9 How. 263 ; *Cook* v. *Moffat*, 5 id. 295. By the law of New York such bonds may be assigned in blank, and any holder can fill the blank with his own name or otherwise. In the mean time, after such assignment in blank, they pass by delivery from hand to hand, and have all the properties of commercial paper. *Hubbard* v. *The New York & Harlem Railroad Co.*, 36 Barb. (N. Y.) 286. The result is, therefore, the same that it would have been if they had been drawn in literal conformity to the statute.

The requirement of the statute in this particular is evidently the result of inadvertence. It applies to the securities spoken of the language necessary in a deed intended to vest in a corporation a fee-simple title to real estate. They were obviously intended to be made negotiable instruments. *Mayor of Vicksburg* v. *Lombard*, 51 Miss. 111.

It appears by the record that the proposition for subscription was twice submitted to the voters. The first time it was rejected ; the second, it was approved by a majority. It is contended that the first submission exhausted the power to submit, and that the second was a nullity. We cannot concur in this view.

The first section of the act of 1860 gave ample power to the proper officers (then the board of police, afterwards the board of supervisors) to subscribe, upon conditions thus expressed : —

" *Provided, however*, that an election shall be held in the county for and on account of which stock is proposed to be subscribed by the qualified electors thereof, at the regular precincts of said county, twenty days' notice of the time of holding such election, and of the amount proposed to be subscribed, and in what number of instalments, being first given by the board of police ; and if, at said election, a majority of the qualified electors voting shall be in favor of

such subscription, then said board shall make such subscription for and in behalf of the county, for the amount specified, by the president of said board of police, subscribing the amount so specified, to the capital stock of said company, but if a majority of those voting shall be opposed to such subscription, the same shall not be made."

The remaining sections provide for the collection of the amount subscribed, by taxation, the mode of collection, &c., if the subscription should be made.

There is no limitation as to the time when, or the number of times, the voters might be called upon to decide the question of subscription. We cannot recognize any restriction as to the latter, in this respect, without adding to the statute what it does not contain. Our duty is to execute the law, not to make it. Such an interpolation would involve the " judge-made law " which Bentham so earnestly denounces. If authority be needed in support of our construction of the clause, it will be found in *The Society, &c.* v. *New London,* 29 Conn. 174.

The present Constitution of the State of Mississippi, ratified Dec. 1, 1869, declares : —

" SECT. 14. The legislature shall not authorize any county, city, or town to become a stockholder in, or to lend its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a special election, or regular election, to be held therein, shall assent thereto."

The learned counsel for the plaintiff in error insists that this section abrogated the act of 1860, and avoids the bonds.

It will be observed that the language of the section is wholly prospective. It is, in effect, that the legislature shall not, in the future, authorize any county, city, or town (without the consent of two-thirds of the legal voters) to do either of two things: 1. Become a stockholder in any company, association, or corporation. 2. Lend its credit to any company, association, or corporation.

The restraint is upon the legislature. It is forbidden to do thereafter either of the two prohibited things.

The act which authorized the subscription here in question, and under which it was made, was passed more than nine years

before the Constitution took effect. As to this act there is no room for any doubt or question. It provided for the payment of the subscription by a tax equal to the amount subscribed.

The amendatory act of 1871, as regards the point under consideration, only changed the mode of payment for the stock. Instead of payment by a tax imposed for that purpose, it provides "that it shall and may be lawful" for the supervisors to issue bonds for such sums as "may be deemed necessary to meet, pay off, and discharge the subscriptions" made theretofore or thereafter under the prior act of 1860.

The eighth section requires the levy and collection of sufficient taxes to pay in due time the amount due upon such subscriptions, or upon the bonds given for their payment.

In neither case was there to be a loan of any kind to the railroad company, and certainly none of "the credit of the county." The constitutional prohibitions do not, therefore, apply in any wise to this case.

The act of 1871 recognizes the distinction between subscriptions made under it and those made under the act of 1860. The former permitted subscriptions by towns, which were not authorized by the latter. In relation to such subscriptions the constitutional majority of two-thirds of the voters was required.

Our construction of the clause here in question has been given to like language in constitutions elsewhere, under similar circumstances. There are several adjudications of this court exactly in point touching the Constitution of Missouri. *County of Henry* v. *Nicolay*, 95 U. S. 619; *County of Callaway* v. *Foster*, 93 id. 567; *County of Scotland* v. *Thomas*, 94 id. 682; *County of Macon* v. *Shores*, 97 id. 272. See also *The State ex rel. Mo. & Miss. Railroad Co.* v. *Macon County Court*, 41 Mo. 453; *State* v. *Greene County et al.*, 54 id. 540; *Cass* v. *Dillon*, 2 Ohio St. 607.

We find no error in the record.

*Judgment affirmed.*

MR. JUSTICE MILLER, MR. JUSTICE BRADLEY, and MR. JUSTICE HARLAN dissented.