Iowa Power & Light Company et al., Appellants, v. Elmer Hicks, Appellee.

Iowa Power & Light Company, Appellant, v. Elmer Hicks, Appellee.

No. 45185.

No. 45255.

JUNE 18, 1940.

REHEARING DENIED SEPTEMBER 27, 1940.

Bradshaw, Fowler, Proctor & Fairgrave, Clyde McFarlin, and J. E. Scovel, for appellants.

W. L. Hassett, C. F. Dickson, E. W. McNeil, and R. W. Boyd, for appellee.

MILLER, J.—These two actions by mandamus, to compel the calling of a special election to submit the question whether plaintiffs should be granted an electric franchise, have been consolidated for submission in this court. While the issues were quite involved and several propositions have been argued here, the decisive questions for our determination are readily apparent when we consider the essential facts, about which there is no substantial dispute in the record.

The appellee, Hicks, is the mayor of the town of Montezuma, Iowa. Appellant Iowa Power & Light Company is an Iowa corporation and appellant Des Moines Electric Light Company is a Maine corporation authorized to transact business in Iowa. The two corporations are closely associated in the production, distribution and sale of electric energy. The Iowa Power & Light Company is operating in Montezuma, using a distribution system owned by the Des Moines Electric Light Company. The Des Moines Electric Light Company formerly

held a franchise to operate in Montezuma, which expired by its terms in June 1938, and has not been renewed.

On March 6, 1939, a special election was called for April 7, 1939, on the proposition of constructing a municipal electric light and power plant under the Simmer law. On March 10, 1939, a petition was filed asking for a special election on the proposition of granting a franchise to the Iowa Power & Light Company and such an election was called for May 12, 1939. On April 7, 1939, the proposal for a municipal plant carried by a vote of 431 to 359. On May 12, 1939, the proposal for a new franchise lost by a vote of 473 to 490.

On June 28, 1939, a petition was filed asking for another special election on the proposition of granting a franchise to the Iowa Power & Light Company. No election was called, and, on July 12, 1939, appellants filed a petition in mandamus asking the court to compel appellee to call the election. Trial was had in August 1939, and on September 1, 1939, a memorandum decision was filed which determined that the proposal, on which a special election was sought, was the same proposition which was rejected by the voters of the town on May 12, 1939; a reasonable time had not elapsed since such election; no change of circumstances or conditions was shown sufficient to warrant interference by the court; it would be an idle formality to ask the electors to speak again on the question that had been answered fairly in the negative; the equities were with appellee, and the petition should be dismissed. On the same day, a decree was entered dismissing the petition. On the following day an appeal therefrom was perfected to this court.

On September 18, 1939, another petition was filed asking for a special election on the proposition of granting a franchise to the Iowa Power & Light Company. This petition differed somewhat from the previous ones, but we need not consider such features at this time. Appellee refused to call an election and, on October 9, 1939, a second petition in mandamus was filed. Issues were joined, trial was had in November 1939,

1088

and, on December 15, 1939, the court entered findings of fact and conclusions of law which determined that the decree of September 1, 1939, was res adjudicata and a bar to the proceedings, and that the proceedings in this court, then pending, were also a bar to such proceedings. On the same day a decree was entered dismissing the action. An appeal was perfected January 9, 1940. The two appeals have been consolidated here and were submitted together.

I. The first question presented for our decision is whether the election of May 12, 1939, precludes appellants from seeking or securing another election on the franchise question. The statutes applicable to the question appear in chapters 304 and 312 of the Code, 1939. Examination of such statutes reveals that there is no express statutory provision that can be construed to be decisive on the question. Also, we are unable to find any former decision of this court which would seem to be decisive. Accordingly, we have a new question raised for the first time in this court.

The statutes of this state provide, in several instances, for an affirmative vote of the citizens of a municipal corporation as a condition precedent to the granting of a franchise or constructing of a public improvement. Investigation of such statutes demonstrates that the election of May 12, 1939, was not final in such a manner as to preclude a subsequent election on the same or a similar franchise question.

Sections 6131 and 6132, appearing in chapter 312 of the Code, 1939, provide for the submission, at a general or special election, of the proposition of erecting a municipal utility plant as a condition precedent to the authorization or establishment of such project. There is no statutory provision precluding a subsequent election on the same proposition should the proposal be defeated.

Sections 5261 and 5263, appearing in chapter 265 of the Code, 1939, provide for submission, at a regular or special election, of a proposal for constructing county buildings as a condition precedent to the ordering of such construction. Section 5271 in said chapter provides that a proposition thus

adopted may be rescinded in a subsequent election, but neither contracts made nor taxes voted prior to the subsequent election can be rescinded. Section 5272 in said chapter makes it mandatory for the board to submit the proposal when petitioned by the necessary voters. There is no provision precluding a second election in the event of an adverse vote.

Section 4753.10, appearing in chapter 241 of the Code, 1939, provides for the submission, at a general or special election, of the proposition for draining, grading or surfacing primary roads. It is a matter of common knowledge that, in the course of surfacing our primary road system, there have been repeated elections in some counties where the proposal was at first rejected, but eventually carried. Apparently, it was assumed that an adverse decision at one election did not preclude the submission, at a subsequent election, of the same or similar proposition. By sections 1 and 2 of chapter 116 of the Acts of the Forty-eighth General Assembly (sections 4773.4 and 4773.5 of the Code, 1939) it is now provided that any county which has authorized the issuance of primary road bonds under chapter 241 or chapter 242 of the Code, 1939, shall have no authority, prior to the year 1950, to authorize an additional county road bond issue, but said provisions do not preclude the voting of an initial county road bond issue in any county which has not previously authorized such a bond issue. The wording of these sections indicates a recognition on the part of the legislature that an adverse vote does not preclude a subsequent election on the same proposition. It is only in the event of a favorable vote that a subsequent election is precluded, and then only until 1950.

Section 6483, appearing in chapter 326 of the Code, 1939, provides for the submission of a proposal to organize a city under the commission plan pursuant to said chapter. Section 6487, appearing in this chapter, provides that, in the event of an adverse decision, the question of adopting a commission plan shall not be resubmitted within two years thereafter. It will be noted that this later section is in the negative rather than the affirmative. Instead of authorizing a resubmission

in the event of an adverse decision, it places a restriction upon such resubmission. This clearly implies that, but for the statutory restriction, the right to a resubmission of the question is not precluded by the adverse vote. Sections 6556 to 6559, inclusive, appearing in the same chapter, provide for a special election on the proposition that the council enact certain ordinances, and it is provided in section 6560 that there shall be not more than one special election in any period of six months for such purpose. These statutes are subject to the same comment, namely, that they appear to assume the right to a subsequent election in the event of an adverse vote, except as limited by specific statutory provision.

In view of the provisions of such statutes, it would seem that the legislature recognizes that, where a special election is held and an adverse decision is rendered on the proposition submitted, that adverse decision does not preclude a subsequent election on the same or a similar proposition, except where a limitation is expressly provided by statute. This general proposition of law was recognized in the case of Calhoun County v. Galbraith, 99 U. S. 214, 219, 25 L. Ed. 410, 412, wherein the court construed certain statutes of the state of Mississippi relating to the holding of an election to authorize the issuance of bonds, stating as follows:

"There is no limitation as to the time when or the number of times the voters might be called upon to decide the question of subscription. We cannot recognize any restriction as to the latter, in this respect, without adding to the statute what it does not contain. Our duty is to execute the law, not to make it. Such an interpolation would involve the 'judge-made law' which Bentham so earnestly denounces. If authority be needed in support of our construction of the clause, it will be found in Soc. for Sav. v. N. London, 29 Conn., 174."

Other authorities could be cited to the same effect. It is unnecessary to prolong this opinion by a discussion of them. We think it manifest that, under the statutes here to be construed, the adverse decision rendered at the election of May

12, 1939, did not preclude a resubmission of the same or a similar question, because there is no legislative restriction in regard thereto.

II. The next question for our decision is whether the court erred in refusing to order by mandamus the special election requested by the petition involved in the first action in mandamus, wherein a decree was entered September 1, 1939. Counsel for appellee have argued quite vigorously that the mayor's decision to grant or refuse such election is not a matter which is subject to supervision by an action in mandamus. We cannot agree with counsel's contention. The proposition appears to be determined by two decisions of this court. Iowa Public Service Co. v. Tourgee, 208 Iowa 36, 222 N. W. 882; Iowa Public Service Co. v. Tourgee, 208 Iowa 198, 225 N. W. 372. These two decisions represented subsequent appeals similar to the appeals involved herein. However, the causes were not consolidated in this court, and, accordingly, two separate decisions were rendered by us. The question presented was directly analogous to that here before us. A petition had been presented to the mayor of Sac City by the Iowa Public Service Company asking for a special election to submit the question whether the city should grant the plaintiff an electric franchise. The mayor refused to call such election, action in mandamus was commenced, resulting in a decree denying relief. Thereafter a new petition was prepared and presented to the mayor. The mayor again refused to call the election. A second mandamus action was commenced, resulting in a second decree dismissing the petition and a second appeal to this court. We reversed the decree in each instance, but held that the plaintiff was entitled to but one election on the question to be submitted and, therefore, remanded the cause with directions to the trial court, upon the election of plaintiff, to order mandamus in either one of the two actions, but not in both.

In the first opinion, we state, at page 40 of 208 Iowa, at page 884 of 222 N. W., as follows:

"There was presented, then, a petition which in all respects

complies with every requirement contained in Section 6132, supra, and the mayor had no discretion. See Incorporated Town of Mapleton v. Iowa L., H. & P. Co., 206 Iowa 9, wherein it is said: 'The mayor has no discretion in the matter. He must act.' Without any evasion, it was his express statutory duty, as defined in Section 6132, supra, to 'submit said question to such a vote.' Moreover, that official, in refusing so to do, omitted to perform an act 'which the law enjoins as a duty resulting from an office * * *,' as contemplated by Section 12440, supra.

"Then mandamus was the proper remedy."

Under the record herein, the petitions complied with the law. Since the adverse vote of May 12, 1939, did not preclude appellants from securing a subsequent election, the mayor's refusal to call such election is clearly a matter which can be controlled by .the court through an action in mandamus. The two decisions last above cited expressly so hold. For us to now hold otherwise would require an overruling of both such decisions. We are not willing to so hold. We believe that the position there taken by this court in each case was sound and we adhere thereto. Accordingly, the trial court should have granted a writ of mandamus in each of the cases involved herein unless, under the peculiar facts presented by the record, there was some reason for refusing such relief.

III. In the findings entered by the court on the first trial, pursuant to which the decree of September 1, 1939, was entered, the court determined that the same proposition had been rejected by the voters of the town on May 12, 1939, that a reasonable time had not elapsed since such election, that no change of circumstances or conditions was shown sufficient to warrant interference by the court, and that it would be an idle formality to ask the electors to speak again on the question that had been answered fairly in the negative. A careful examination of the record discloses that the court was justified in making such findings. Appellants complain that the court's decision reads into the statute provisions that have not been

enacted by the legislature and that accordingly, the decision is subject to the same criticism suggested by the supreme court in the case of Calhoun County v. Galbraith, supra. We do not so construe the court's decision. For appellants to be entitled to relief, it was not only necessary that they show that the mayor was under an obligation to decide whether or not an election should be called, but also it was necessary for them to show a basis for the court controlling such decision by mandamus.

In the case of State v. Ottumwa Ry. & Light Co., 178 Iowa 961, 968, 160 N. W. 336, 339, we state:

"That the issuance of a writ of mandamus is not a matter of right, but rests in the discretion of the court, was recognized in Vincent v. Ellis, 116 Iowa 609 [88 N. W. 836]. See also State v. Napier, County Judge, 7 Iowa, 425; Chance v. Temple, 1 Iowa, 179. As said in People v. Board of Assessors, 137 N. Y. 201 (33 N. E. 145):

" 'The writ of mandamus is not always demandable as an absolute right, and whether it shall be granted or not frequently rests in the discretion of the court.' "

Pursuant to the above pronouncement, we are disposed to the view and hold that, under the record presented at the first trial herein, resulting in the decree of September 1, 1939, a different question was presented from that presented in the case of Iowa Public Service Co. v. Tourgee, supra. The finding of the court constituted a proper basis for denying, as a matter of discretion, the issuance of a writ of mandamus. The court acted within such discretion. We are not disposed to interfere therewith. Accordingly, the decree entered on that date must be and it is affirmed.

IV. This brings us to the question whether the court erred in denying appellants relief by the decree entered December 15, 1939. This question presents quite a different situation and we are of the opinion that an opposite result must be reached in our decision thereon.

The second trial was held in November, six months after

the election in May. At that election the proposition had been defeated by a vote of 473 to 490, or by a majority of but 17 votes. The record on the second trial showed without question that, of those electors who had voted in May, 25 had moved away and 6 had died. It was also shown that 30 new adult residents had moved to Montezuma and 6 residents had become of age in the meantime. The findings on the first trial were that relief should be denied because there was no showing of a change of circumstances or conditions which would warrant interference by the court to compel the electors to again speak on the question that had been answered fairly in the negative. While such conclusion was warranted under the record at the first trial, no such conclusion was justified by the record at the second trial, and, under our decisions in the cases of Iowa Public Service Co. v. Tourgee, supra, the court should have granted relief by mandamus.

It will be noted that the findings and conclusions of the court, entered on December 15th, were to the effect that the decree of September 1, 1939, was res adjudicata and a bar to the proceedings, and that the proceedings in this court on appeal from such decree were also a bar to the proceedings. The conclusion of the trial court in this regard is directly opposed to our decision in the second opinion in the case of Iowa Public Service Co. v. Tourgee, supra. The holding was clearly erroneous. It is there pointed out that, had the first decree granted relief by mandamus, that would have barred a second action for the same relief, but, where the first decree denied relief, the second action was not barred thereby.

Also, as above pointed out, a different situation was presented by the record at the second trial from that presented at the first trial. The court was warranted in denying relief at the first trial because of the absence of a showing which was satisfactorily made at the second trial. Since different questions were presented, the first decision could not be an adjudication of the question presented at the second trial.

By reason of the foregoing, the decree entered herein on

September 1, 1939, is affirmed, but the decree entered herein on December 15, 1939, is reversed and the cause is remanded with directions that the court issue a writ of mandamus in accordance with the prayer of the petition.—Affirmed on first appeal; reversed on second appeal and remanded with instructions.

MITCHELL, SAGER, STIGER, OLIVER, HALE, and BLISS, JJ., concur.