CHICAGO, R. I. & P. RY. CO. *et al.* v. HOLLIDAY *et al.*

No. 2314. Opinion Filed January 9, 1915.

Rehearing Denied February 9, 1915.

(145 Pac. 786.)

1. DEATH—Right of Action—Statute. Sections 4611 and 4612, Wilsons Rev. & Ann. St. 1903 (sections 5281 and 5282, Rev. Laws 1910), were adopted according to their terms, and were put in force and effect by section 2, art. 25, of the Schedule to the Constitution.

2. MASTER AND SERVANT—Injury to Servant—Federal Employers' Liability Act—Application. The act of Congress of June 11, 1906 (34 Stat. 232, c. 3073), is repugnant to the Constitution of Oklahoma and is locally inapplicable, and was not extended to and put in force in this state by section 2, art. 25, of the Schedule to the Constitution.

3. **APPEAL AND ERROR—Death—Scope of Review—Federal Question—Right of Action—What Law Governs.** Plaintiffs and defendants in the trial court proceeded upon the theory that sections 5281 and 5282, Rev. Laws 1910, were controlling. There is nothing in the pleadings or the evidence, or otherwise in the record, to bring the case within the purview of the Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. 1913, secs. 8657-8665), or to show that defendants relied upon said latter act or directed the attention of the trial court to same. No federal question was sought to be raised until after the case was brought to this court. Held, that the case is controlled by the state law, **supra,** Held, further, that defendants cannot successfully raise a federal question for the first time in this court on appeal.

(Syllabus by the Court.)

*Error from District Court, Comanche County;*

*J. T. Johnson, Judge.*

Action by Magnolia Holliday and another against the Chicago, Rock Island & Pacific Railway Company and others. Judgment for plaintiffs, and defendants brings error. Affirmed.

*C. O. Blake* and *Stevens & Myers,* for plaintiffs in error.

*Al. J. Jennings* and *Stuart, Cruce & Gilbert,* for defendants in error.

RIDDLE, J. This action was commenced April 29, 1909, in the district court of Comanche county, by Magnolia Holliday, for herself and as next friend of Joseph Holliday, Jr., to recover damages from the Chicago, Rock Island & Pacific Railway Company, W. J. Duvall, and A. H. Reed, for the wrongful death of Joseph L. Holliday, Sr., the husband of Magnolia, and the father of Joseph L. Holliday, Jr. The petition, as filed in the lower court, is substantially as follows: That defendant railway company is a railroad corporation, organized and existing under and by virtue of the laws of the state of Illinois, and as such was, at all times hereinafter mentioned, operating a line of railway into the counties of Comanche and Grady, state of Oklahoma. That said rail-

way company maintained a division and railway yard for moving, switching, and handling engines, coaches, box cars, flat cars, and dumping cars at the city of Chickasha. That defendant W. J. Duvall is a citizen of Grady county, and was an employee and servant of said railway company at the time of the injury and death of Joseph L. Holliday, Sr., and that said Duvall was acting in the capacity of yardmaster in said defendant company's yards at Chickasha, and as such yardmaster had charge of and directed the movement and switching from place to place the trains, cars, etc., in defendant company's yards. That defendant A. H. Reed is a citizen of Grady county, and was, at all times mentioned herein, an employee and servant of defendant company, acting in the capacity of engine foreman. That it was a part of his duty as such engine foreman to move, switch, and cause to be moved, and switched from place to place, in the yards of defendant company at Chickasha, the cars, engines, etc., belonging to and used by said defendant company. That plaintiff Magnolia Holliday is a citizen of Comanche county. That she was the legal wife of Joseph L. Holliday, Sr., deceased, who, at the time of his death, was an employee and servant of defendant company, working as a brakeman on a work train belonging to defendant company. That plaintiff Joseph L. Holliday, Jr., an infant under the age of 21 years, the son of Joseph L. Holliday, Sr., now deceased, and Magnolia Holliday, resides in Comanche county. That at the time of the death of said Joseph L. Holliday, Sr., he was a resident of the state of Oklahoma, and that Joseph L. Holliday, Sr., died intestate in this state, and since his death no administrator or personal representative of him has been appointed, and plaintiff Magnolia Holliday brings this suit for the sole benefit of herself and Joseph L. Holliday, Jr., her infant child. That on the ............ day of September, 1908, defendant company, W. J. Duvann, A. H. Reed, and the employees and servants of said defendant company directed and caused to be sent out a work train or construction train belonging to defendant company, under the control of Conductor

P. R. Pressley, to construct and repair defendant company's track on the Pauls Valley branch of defendant company, under the control and management of the agents, servants, and employees of said defendant. That while said train was returning to the city of Chickasha, over the railroad track belonging to defendant, it collided with two or more flat cars belonging to defendant railway company, wrecking the caboose of said work train above described. That said caboose, so wrecked as aforesaid was in an old, worn, and dilapidated condition. That said flat cars aforesaid were, by the gross neglect, carelessness, and mismanagement of defendant company, W. J. Duvall, and A. H. Reed, their servants, agents and employees, placed on defendant company's railroad track, known as the Pauls Valley branch, and said defendants, their agents, servants, and employees, negligently, carelessly, and with gross mismanagement, placed the said flat cars on said railroad track, having full knowledge that the work train was out on the railroad track, known as the Pauls Valley branch of defendant company's railroad, and that said work train would have to come into the yards of said defendant company, situated in the city of Chickasha, upon which said defendants, their agents, servants, and employees, had so negligently and carelessly placed the said flat cars aforesaid. That said collision was caused by the gross neglect, carelessness, and mismanagement of the defendants aforesaid, their agents, servants, and employees. That by reason of the gross neglect, carelessness, and mismanagement of defendants, its agents, servants, and employees, as aforesaid, in causing said collision, Joseph L. Holliday, Sr., an employee and servant of defendant company on said work train, on the .......... day of September, 1908, was maimed, crushed, and killed. That by means of the mismanagement, carelessness, and gross neglect of said defendants, their agents, servants, and employees in placing the aforesaid flat cars on the railway track, causing the collision aforesaid, said Joseph L. Holliday, Sr., was maimed, crushed, and killed, and the said death of the said Joseph L. Holliday was without any default, neg-

lect, or want of care on the part of said Joseph L. Holliday, Sr. That by reason of the death of said Joseph L. Holliday, Sr., so caused as aforesaid, the plaintiffs Magnolia Holliday and Joseph L. Holliday, Jr., an infant under the age of 21 years, are damaged in the sum of $50,000.

To this petition, defendants on January 24, 1910, each filed the following demurrer:

"And now comes the said defendant and demurs to the petition of plaintiffs filed herein, for the reason and upon the ground: (1) That the court is without jurisdiction. (2) That the plaintiffs have no legal capacity to sue. (3) That there is a defect of parties plaintiff and a defect of parties defendant. (4) That several causes of action are improperly joined. (5) That the petition does not state facts sufficient to constitute a cause of action in favor of the plaintiffs and against this defendant."

After the court overruled this demurrer, to which exception was saved, defendant filed its answer, consisting: (1) Of a general denial; (2) a plea of contributory negligence, in that deceased, at the time of his death, was acting in violation of certain rules and regulations of defendant company, and that the injuries resulted from the violation of such rules.

On February 7, 1910, the cause was tried to a jury. A demurrer to the evidence was overruled, exceptions saved, and a verdict returned in favor of plaintiffs for $20,000. Motion for new trial was filed and overruled, and defendants bring error to secure a reversal of said judgment.

The petition in error contains the following assignments: (1) The court erred in overruling defendant's demurrer to plaintiffs' petition filed herein. (2) The court erred in overruling defendant's demurrer to the evidence. (3) The court erred in overruling defendants' motion for new trial.

Plaintiffs in error will be designated defendants, and defend-

ant in error as plaintiff, in accordance with their position in the trial court.

The right of action for death wrongfully caused by another did not exist at common law; hence, if it exists in this state, it must be by reason of some constitutional or statutory provision.

It is the contention, of plaintiffs that sections 4611 and 4612, Wilson's Ann. St. (sections 5281 and 5282, Rev. Laws 1910), were adopted and put in force by virtue of section 2, art. 25, of the Schedule to the Constitution (section 366, Williams' Const.), and were in force at the time of the institution of this suit.   Defendant contends in this court that the act of Congress of June 11, 1906, known as the "Employers' Liability Act," was in force in the territory of Oklahoma at the time of the admission of the state, and that said act rendered void and superseded the provisions of the territorial statute relied upon by plaintiffs, and that said act of Congress, being the only law in force in the territory of Oklahoma relating to the subject covered by sections 5281 and 5282, Rev. Laws 1910, was adopted and extended in force in this state by the Constitution; that, under said act of congress, the right of action survived only to the representatives of the deceased. It is further the contention of defendant that the act of Congress of April 22, 1908, was applicable, and that this suit was governed by said act, and, under said act, plaintiffs were not authorized to maintain this suit.

Section 5281 and 5282, Rev. Laws 1910, read:

"5281.   When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived, against the latter for an injury for the same act or omission.   The action must be commenced within two years.   The damages must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased.

"5282. In all cases where the residence of the party whose death has been caused as set forth in the preceding section, is at the time of his death in any other state or territory, or when, being a resident of this state, no personal representative is or has been appointed, the action provided in the said section may be brought by the widow, or where there is no widow, by the next of kin of such deceased."

It is clear from the record that this suit was filed and prosecuted under and by virtue of the foregoing provisions of the statute, quoted *supra;* and it is equally slear that the defense interposed by defendant was on the theory that said statute was in force at the time of the institution and filing of said suit, and that plaintiffs' suit was prosecuted thereunder.

The first question presented for our determination is as to what laws, if any, were in force in this state at the time of the institution of this suit, giving a right of action to the widow or next of kin for the death of one, caused by the wrongful act or omission of another. If we find the local territorial law was in force, then the judgment of the trial court must be affirmed, unless the case, as made, comes within the purview of the federal Employers' Liability Act, of date April 22, 1908, in which latter case a reversal will be required, provided defendants have availed themselves of its provisions by asserting rights under it in the trial court, or in some proper manner directed the attention of the trial court to its provisions, thereby raising this issue in that court. The Employers' Liability Act of June 11, 1906, so far as applicable here, is as follows:

"That every common carrier engaged in trade or commerce in the District of Columbia, or in any territory of the United States, or between the several states, or between any territory and another, or between any territory or territories and any state or states, or the District of Columbia, or with foreign nations, or between the District of Columbia and any state or states or foreign nations, shall be liable to any of its employees, or, in the case of his death, to his personal representative for the benefit of his widow and

children, if any, if none, then for his parents, if none, then for his next of kin dependent upon him, for all damages which may result from the negligence of any of its officers, agents, or employees, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, ways, or works.

Sec. 2.   That in all actions hereafter brought against any common carriers to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery where his contributory negligence was slight and that of the employer was gross in comparison, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.   All questions of negligence and contributory negligence shall be for the jury.

"Sec. 3.   That no contract of employment, insurance, relief benefit, or indemnity for injury or death entered into by or on behalf of any employee, nor the acceptance of any such insurance, relief benefit, or indemnity by the person entitled thereto, shall constitute any bar or defense to any action brought to recover damages for personal injuries to or death of such employee: Provided, however, that upon the trial of such action against any common carrier the defendant may set off therein any sum it has contributed toward any such insurance, relief benefit, or indemnity that may have been paid to the injured employee, or, in case of his death, to his personal representative.

"Sec. 4.   That no action shall be maintained under this act, unless commenced within one year from the time the cause of action accrued."

Did the framers of the Constitution adopt, or intend to adopt and extend over the state, the federal Employers' Liability Act, of date June 11, 1906?   We are clearly of the opinion they did not. The reason for so concluding are as follows:   In discussing this question, it must be remembered that, at the date of statehood, the federal Circuit Courts for the Western Districts of Kentucky and Tennessee had declared this law unconstitutional and void *in toto,*

so far as it applied to the states, which decisions were affirmed by the federal Supreme Court January 6, 1908. *The Employers' Liability Cases,* 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297. The ground upon which this law was declared void, briefly stated, was that it invaded states' rights. The concluding words of the court, speaking through its present Chief Justice, are:

"Concluding, as we do, that the statute, whilst it embraces subjects within the authority of Congress to regulate commerce, also includes subjects not within its constitutional power, and that the two are so interblended in the statute that they are incapable of separation, we are of the opinion that the courts below righly held the statute to be repugnant to the Constitution and nonenforceable; and the judgments below are therefore affirmed."

This law, however, in the territory of Oklahoma at the date of statehood, in all its parts, was in full force and effect, and, if adopted at all, must have been adopted *in toto.* That this act primarily was intended to regulate and apply to interstate, and not to intrastate, commerce, is clear from its text, as analyzed by the Supreme Court:

"From the first section it is certain that the act extends to every individual or corporation who may engage in interstate commerce as a common carrier. Its all-embracing words leave no room for any other conclusion. It may include, for example, steam railroads, telegraph lines, telephone lines, the express business, vessels of every kind, whether steam or sail, ferries, bridges, wagon lines, carriages, trolley lines, etc. Now, the rule which the statute establishes for the purpose of determining whether all the subjects to which it relates are to be controlled by its provisions is that any one who conducts such business to be a 'common carrier engaged in trade or commerce in the District of Columbia, or in any territory of the United States, or between the several states,' etc. That is, the subjects stated all come within the statute when the individual or corporation is a common carrier who engages in trade or commerce between the states, etc. From this it follows that the statute deals with all the concerns of the individuals or corporations to which it relates, if they engage as common carriers in trade or commerce between the states, etc.,

and does confine itself to the interstate commerce business which may be done by such persons. Stated in another form, the statute is addressed to the individuals or corporations who are engaged in interstate commerce and is not confined solely to regulating the interstate commerce business which such persons may do; that is, it regulates the persons because they engage in interstate commerce and does not alone regulate the business of interstate commerce."

If this law was adopted and extended in force in this state, when so adopted it became state legislation and ceased to be federal legislation. It was as clearly beyond the power of the state to legislate on subjects within federal jurisdiction as it was for Congress to legislate concerning subjects wholly within the jurisdiction of the states. If this law was adopted, it was adopted as a whole, and included that portion covering subjects relating to interstate commerce as well as the subjects relating to intrastate commerce. The law was indivisible. On this point, the Supreme Court said:

"Equally clear is it, generally speaking, that where a statute contains provisions which are constitutional and others which are not, effect may be given to the legal provisions by separating them from the illegal. But this applies only to a case where the provisions are separable and not dependent one upon the other, and does not support the contention that that which is indivisible may be divided."

That Congress may legislate legitimately concerning the subject relating to the master's liability to his servants, when applied to interstate commerce, can no longer be doubted, as said by the Supreme Court, in the case, *supra*:

"It cannot be said that because a regulation adopted by Congress as to such train, when so engaged in interstate commerce, deals with the relation of the master to the servants operating such train or the relations of the servants engaged in such operation between themselves, that it is not a regulation of interstate commerce. This must be, since to admit the authority to regulate

Form 18

such train, and yet to say that all regulations which deal with the relation of master and servants engaged in its operation are invalid for want of power would be but to concede the power and then to deny it, or at all events to recognize the power and yet to render it incomplete."

Thus, we see that this act was intended to and did apply exclusively to interstate carriers and primarily relate to subjects pertaining to interstate commerce, and its terms applied equally to employees who were injured while employed in interstate commerce as to those employees engaged in and performing service in intrastate commerce. That the state can pass no law directly regulating commerce or regulating and fixing the liability of the master to his servants for injuries received by the latter while actually employed in and performing service directly pertaining to interstate commerce must be conceded. Especially is this true if the federal government has taken possession of the field. *Sherlock et al. v. Alling, Adm'r,* 93 U. S. 99, 23 L. Ed. 819; *Mondou v. N. Y., N. H. & H. Ry. Co.,* 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; *Adair v. United States,* 208 U. S. 161, 28 Sup. Ct. 277, 52 L. Ed. 436, 13 Ann. Cas. 764; *El Paso & N. E. Ry. Co. v. Gutierrez,* 215 U. S. 87, 30 Sup. Ct. 21, 54 L. Ed. 106; Labatt, Mast. & S. (2d Ed.) sec. 2798. We must not be understood as holding that the state is without power to legislate fully upon this subject, when such legislation does not, upon its face, or necessarily in its operation, apply to employees while actually employed or engaged in service pertaining to and directly affecting interstate commerce. Or, to state it in another form, when such legislation does not on its face or by necessary operation enter the same field covered by and in control of federal jurisdiction, the power of the state is undoubted. This power has been too often recognized and upheld to require citation of authority. Had the act of June 11, 1906, *supra,* applied only to subjects under state control and not directly affected interstate commerce on its face, or by necessary operation, and on this ground had been declared void as federal legislation, the state

could have undoubtedly adopted and continued same in force in
this state. That this act of Congress must continue in force as a
whole, or totally fall, cannot be doubted. Its terms covering the
subject here involved were so interblended that they were indivisi-
ble. It is inconceivable that the framers of the Constitution of
this state would adopt and extend in the state an act not only
which had been declared void, as applied to the states as national
legislation, but also which would be obviously void, if adopted as
state legislation, in that the act on its face applied solely to car-
riers engaged in interstate commerce and did not purport to apply
to intrastate carriers. Thus, it is unreasonable to presume that
the makers of the Constitution had in mind this act when they
inserted section 2, art. 25, of the Schedule to the Constitution.

Other reasons may be suggested, which, to our minds, are
sufficient to warrant us in holding that this act was locally in-
applicable and repugnant to our Constitution.

Viewing and discussing this question from the standpoint of
the territory and succeeding state, a careful comparison of these
two distinct statutes will show that the act of Congress impinged
upon and mutilated the operative effect of the territorial statutes
by prescribing a different rule in respect to cases of death of
employees of common carriers engaged in trade or commerce in
the territory, as follows: (1) Instead of giving the right of ac-
tion in all cases where death is caused by the wrongful act or
omission of another, as formerly, it gave the right only in case of
death of an employee of a common carrier engaged in trade or
commerce within the territory, and where the death occurred as a
result of the negligence of such employer, and under the circum-
stances specified in the act, leaving all other cases subject to the
local statute. (2) Instead of following the local statute and
naming the next of kin, after the "widow and child" (subject to
our law of distribution of personal property), as the beneficiaries,
it made the parents of the deceased, or, if none, the next of kin

dependent upon him, the beneficiaries. (3) Instead of giving the right of action to the deceased's personal representative, or if the deceased was a resident of another state, or, being a resident of Oklahoma, had no personal representative, to the beneficiaries the right of action, it gave the right of action alone to the personal representative. (4) Instead of giving a right of action for all wrongfully caused death, including, for instance, intentionally caused death, it gave a right of action only for death negligently caused in specified respects. (5) Instead of giving a right of action within two years, it gave a right limited to one year. (6) Instead of giving a right of action subject to be defeated by contributory negligence, in accord with the general rule of law, it gave a right of action in which, if the carrier's negligence was gross and that of the deceased slight, contributory negligence would not bar the right of recovery but should result in diminution of damages in proportion to the amount of negligence attributable to the employee. (7) Instead of giving a right of action subject to the defense of assumption of risk, this defense is excluded, as well as certain other contractual defenses. (8) Instead of leaving the question of negligence and of contributory negligence to the court and jury, it made these questions for the jury and excluded the power of the court in respect thereto. (9) Instead of relieving the master from liability as formerly, for the negligence of a fellow servant of the deceased, it imputed the latter's negligence to the master.

The line of demarcation between the territorial statute and the act of Congress made the law covering the subject of wrongful death almost unthinkably incongruous and lacking in uniformity. The territorial law was in terms broad enough to comprehend the whole subject of wrongful death; but the act of Congress withdrew from its operative effect a part of that subject. When all of our constitutional provisions and statutes relating to the same subject or to kindred subjects, or affecting the same, and the inconsistencies therewith of the afore-specified peculiar features of

the said act of Congress, are considered, we are unable to think otherwise than that the act of Congress must be deemed repugnant to this Constitution and locally inapplicable, and therefore rejected by said section 2, art. 25, of the Schedule to the Constitution. Section 7, art. 23, of the Constitution, reads:

"The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation."

This provision speaks of "the right of action" as a single thing, and does not seem to contemplate that there are two rights of action, one under an existing local statute, couched in terms of general and all-comprehending application, and another under said act of Congress limited to the specified cases in which the right is there given or declared.

Sections 46, 46(o), 51, and 59, art. 5, of the Constitution, read:

"Sec. 46. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: * * *"

"Sec. 46(o) Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts. * * *"

"Sec. 51. The Legislature shall pass no law granting to any association, corporation, or individual, any exclusive rights, privileges or immunities within this state."

"Sec. 59. Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

Section 6, art. 23, Const., reads:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

Section 36, art. 9, Const., reads:

"The common-law doctrine of the fellow servant, so far as it affects the liability of the master for injuries to his servant, resulting from the acts or omissions of any other servant or servants of the common master, is abrogated as to every employee of every railroad company and every street railway company or interurban railway company, and of every person, firm, or corporation engaged in mining in this state; and every such employee shall have the same right to recover for every injury suffered by him for the acts or omissions of any other employee or employees of the common master that a servant would have if such acts or omissions were those of the master himself in the performance of a nonassignable duty; and when death, whether instantaneous or not, results to such employee from any injury for which he could have recovered under the above provisions, had not death occurred, then his legal or personal representative, surviving consort or relatives, or any trustee, curator, committee or guardian of such consort or relatives, shall have the same rights and remedies with respect thereto, as if death had been caused by the negligence of the master. And every railroad company and every street railway company or interurban railway company, and every person, firm, or corporation engaged in underground mining in this state shall be liable under this section, for the acts of his or its receivers. Nothing contained in this section shall restrict the power of the Legislature to extend to the employees of any person, firm, or corporation, the rights and remedies herein provided for."

It may be well to observe here that although a constitutional provision that the Legislature shall not pass laws of a certain character operates prospectively only (*Mestas v. D. C. & C. Co.*, 12 Wyo. 414, 76 Pac. 567, and the numerous cases therein cited, including *Supervisors of Calhoun County v. Galbraith*, 99 U. S. 214, 25 L. Ed. 410), and does not prevent the adoption of such inhibited laws by such a Schedule of the Constitution as section 2 of our own, it is material to inquire and ascertain whether a prior law, claimed to have been so adopted, is prohibited by, or is inconsistent with, the constitutional provisions in order to determine whether it was in fact so adopted or should be regarded as rejected

under the repugnancy or local inapplicability provisions of such section of the Schedule; and we have quoted, *supra,* from our Constitution only for the purpose of this inquiry.

It may be that employees of common carriers engaged in trade or commence and such carriers themselves are a whole and not part of a class, and that in this aspect of the inquiry the adoption of the act of Congress of June 11, 1906, would not seem inconsistent with the foregoing constitutional provisions against the enactment of special laws; but (quoting 36 Cyc. 987-988) "the distinction between general and special laws and private and public laws depends on all the attendant circumstances, having regard to the effect rather than the form of the statute;" and when, in addition to the specification of the limited classes of persons, natural and artificial, affected by the act of Congress, its many erratic departures from our more general and in terms all-comprehending statutes relating to wrongfully caused death, as hereinbefore specified, are considered, an intent to adopt same is rendered improbable. It withheld from the operative effect of our general statutes, relating to wrongful death, a part of the subject-matter of the same and introduced into the practice, in such specified cases a peculiar rule as to the trial of the question of primary negligence and possibly in other features of practice. But the question as to whether it is, if adopted, a special law, "where a general law can be made applicable," can best be considered and determined by carefully comparing each and all of its specified peculiar and differentiating features from the local law, with the above-quoted provisions of the Constitution relating to the enactment of special laws.

The adoption of the act of Congress also seems repugnant to said section 51 of our Constitution, above quoted, in that it gives common carriers exclusive privileges and immunities in that they are liable only for negligently and not every wrongfully caused death and to an action therefor brought within one year; also to

said section 6, art. 23, of our Constitution, in that it modifies the defense of contributory negligence and abolishes the defense of assumption of risk; also to said section 36, art. 9, of our Constitution, in that while the said section abrogates the common-law doctrine of the fellow servant in certain cases therein specified, but without including all common carriers, this act of Congress, if adopted, purports to abrogate that doctrine in every case of death of an employee of any common carrier engaged in interstate commerce. The section of the Constitution quoted expressly acknowledges the power of the Legislature to extend the abrogation beyond its extent in that section; but we do not think it could have been the intent of the framers of the Constitution to include in an adopted statute, such as this act of Congress is, any further abrogation than is specified in this section of the Constitution. It would seem that such further abrogation would have been made, if it had been intended. Not only is this true, but such act as that passed by Congress is not in harmony with our statutes and decisions, according to the real party in interest the right to sue in his own name. See sections 3898, 3918, Stat. 1893 (sections 4681, ·4701, Rev. Laws 1910, and cases cited in notes to said sections of Rev. Laws 1910). Nor is it in harmony with the general policy of our laws in other respects indicated by the specified departures. In construing the Constitution, the intent is to be ascertained by reference to the foregoing proper sources of information. *State ex rel. Caldwell v. Hooker, County Judge,* 22 Okla. 712, 98 Pac. 964. This holding is in harmony with the doctrine stated in *Criswell v. Montana Railway Co.,* 18 Mont. 167, 44 Pac. 525, 33 L. R. A. 554. Section 30 of the Montana law, relating to domestic railroads, was involved in that case. Said section reads:

"That in every case the liability of the corporation to a servant or employee acting under the orders of his superior shall be the same in case of injury sustained by default or wrongful act of his superior, as to an employee not appointed or controlled by him, as if such servant or employee were a passenger."

There were other acts of the Legislature permitting foreign railway companies to extend their lines into Montana; but the court held the above-quoted section applied only to domestic roads, hence was not adopted by the section of the Schedule, in that it prescribed a different liability for a domestic road from that which applied to a foreign road. Section 1 of the Schedule to the Constitution of Montana is practically the same as ours. The court in that case, speaking of the section of the Schedule involved, said:

"This provision is likewise self-executing. By it, rights were preserved. It operated of itself to keep in force a system of laws for the government of the state, unless such laws were inconsistent with the Constitution. But, as to any such repugnant statutes, it operated as an effective repeal, for, when the Constitution became the fundamental law, acts in conflict with it yielded; and, when the question of a conflict is presented to the court, and the conflict clearly appears, the statute must be decided to be inoperative and void. Cooley, Const. Lim. p. 58. As the Supreme Court of Illinois has very recently said: * * * 'That a law passed, either before or after the adoption of the Constitution, which is repugnant to its provisions, must be held to be of no valid force, and precisely as if it had been repealed before the performance of the act.' *Washingtonian Home v. Chicago,* 157 Ill. 414 [41 N. E. 893] 29 L. R. A. 798. We find high authority for our opinion in the case of *Norton v. Brownsville Taxing Dist. Com'rs,* 129 U. S. 479 [9 Sup. Ct. 322, 32 L. Ed. 774]. * * * The court refers to the argument that the Constitution extended the law to the enactment of a statute, and rejects the view that a law inconsistent with the Constitution when adopted is re-enacted, 'so to speak,' by a section like No. 1 of the Schedule to the Constitution of Montana. 'The power of ordinary legislation,' says Chief Justice Fuller, 'is vested, under all our constitutions, in the legislatures, and the constitutional convention of Tennessee did not assume to exercise such power. * * * And there is nothing here to justify the conclusion that section 29 of article 2 was designed to operate by way of amendment to prior laws nor can it so operate, nor the act of 1870 be held to have been kept in force, for the reasons already indicated.' *Norton v. Brownsville Taxing Dist.*

*Com'rs,* 129 U. S. 479 [9 Sup. Ct. 322, 32 L. Ed. 774]. * * *
It also follows that by section 697 * * * a greater burden
was put upon appellant than was placed upon a foreign company
of a similar character. The statute, therefore, being inconsistent
with the Constitution, was annulled by the adoption of the Con-
stitution."

That the Schedule of our Constitution adopts two such dis-
tinct and incongruous statutes on the single subject of death by
wrongful act is unbelievable in the light of the constitutional
and statutory provisions already referred to as inconsistent with
that idea; and it is equally unbelievable that anything less than
a law, giving the right of action for death in all cases where
caused by wrongful act or omission of another, was adopted.
Thus, we hold that the act of Congress is repugnant to our
Constitution and locally inapplicable, and therefore was not
adopted by section 2 of the Schedule.

It remains to be seen if the territorial statute was adopted
as partially superseded in its operative effect by the act of Con-
gress, notwithstanding the rejection of the latter act, or did the
rejection of the latter act *ipso facto* remove the only obstacle
to the operative effect of the former, and was the former statute
adopted according to its terms? In our opinion, sections 5281
and 5282, Rev. Laws 1910, were adopted, not as in operative
effect, but in whole, and according to their terms. It was the
positive interference of the act of Congress that partially super-
seded the effect of the territorial statute, not any inherent de-
ficiency in the latter; and, when the act of Congress was stricken
down, what was there to interfere with the operative effect of
the local statute? That Congress had plenary power to legislate
for the territory of Oklahoma cannot be doubted. The territor-
ies have been characterized as young states, arriving at maturity
when admitted into the Union. Section 26, Lewis' Sutherland
Stat. Const., states:

" 'The very fact,' says Mr. Wharton, 'that territories are

infant states, to be admitted into the Union on maturity, shows that they are to be governed on the same general principles, so far as is applicable, as are states. * * *' Only a political change is produced by admission into the Union as a state. Congress then ceases to legislate for its people, or in regard to their internal and domestic concerns. * * * The territorial laws enacted by Congress or the local Legislature continue in force so far as they are consistent with the new condition of statehood and the provisions of the state Constitution."

The Supreme Court of the United States, in the case of *American Insurance Co. v. 356 Bales of Cotton*, 1 Pet. 511, 7 L. Ed. 242, speaking through Chief Justice Marshall upon the subject of acquiring new territory to form states, etc., said:

"On such transfer of territory, it has never been held that the relations of the inhabitants with each other undergo any change. Their relations with their former sovereign are dissolved, and new relations are created between them and the government which has acquired their territory. The same act which transfers their country transfers the allegiance of those who remain in it; and the law, which may be denominated political, is necessarily changed, although that which regulates the intercourse and general conduct of individuals remains in force, until altered by the newly-created power of the state. * * * It has been already stated that all the laws which were in force in Florida while a province of Spain, those excepted which were political in their character, which concerned the relations between the people and their sovereign, remained in force until altered by the government of the United States."

The act of Congress of June 11, 1906, *supra*, as applied to the territory, superseded and for a time suspended the territorial act, so far as it covered the same field. It must be presumed, however, that Congress did not intend for it to remain in force longer than statehood. The Enabling Act authorized the framers of the Constitution and the people in adopting same to repeal this act of Congress or any other territorial act. When this act was rejected by the Constitution, it simply had the effect to re-

peal the same; and the repealing of said act, either expressly or by implication, removed the suspension and the territorial act became operative.

In 36 Cyc. p. 1099, it is stated:

"The suspension of a statute means a temporary stop for a time. The power of suspending laws cannot be exercised, except by the Legislature." *Jeffreys v. Huston*, 23 Idaho, 372, 129 Pac. 1065; *State ex rel. Holcombe v. Burdick*, 4 Wyo. 290, 33 Pac. 131.

The territorial statute was in force in the territory at and before the adoption of our Constitution. Section 2 of the Schedule does not require that it must have been in operative effect as to every part of the subject within its terms as a condition precedent to its adoption; but the rejection of the act of Congress left it in full possession of the field claimed by its terms, and it was thenceforth in full operative effect as well as in force. By the term "in force," which is used in the Schedule, is meant in "binding power, validity" (the Oxford Dictionary); and by the term "in effect," which is omitted from the requirement of the Schedule, is meant "operative." Within the meaning of section 2 of the Schedule, this statute was in force at the time of the adoption of our Constitution, although its operative effect had been superseded to the extent the subject was covered by the act of Congress only until this act was rejected.

For the same reason that the act of Congress of 1906, in part, was rejected as repugnant to the above-quoted provisions of the Constitution and locally inapplicable, it may be at least doubted if the territorial statute quoted, in its operative effect, would not be locally inapplicable and repugnant to the Constitution; and, if brought over in part, it seems almost, if not quite, necessary to hold that it was brought over in whole and according to its terms. Section 7, art. 23, of the Constitution, makes it certain that some pre-exising law, giving a right of action for

wrongful death, was adopted by the Constitution, and one or both of the two statutes were certainly adopted by the same. If the territorial statute was the only one adopted, was it adopted not only to the extent it was in force as respects the subject to which it relates but to the extent of its plain terms? The act of Congress of June 11, 1906, did not destroy a word of the territorial statute, although it superseded its operative effect to a limited extent and suspended its force by taking away a part of the subject to which it had hitherto applied. We do not understand that the · word "supersede" as used in the case of *El Paso & N. E. R. Co. v. Gutierrez, supra,* necessarily means that all territorial law, within the purview of the act of Congress there under consideration, is annulled. The word "supersede" (according to Black's Law Dictionary) means "annul; stay; suspend." And we assume that, where the proper considerations and circumstances justify, a territorial law should be held stayed or suspended in its operative effect, rather than annulled by such congressional act as the one under consideration. Also see *In re Macon Sash, etc., Co.* (D. C.) 112 Fed. 323; *In re Storck Lumber Co.* (D. C.) 114 Fed. 360; *In re Rogers* (D. C.) 116 Fed. 435; *Carling v. Seymore L. Co.,* 113 Fed. 483, 51 C. C. A. 1; *In re Curtis* (D. C.) 91 Fed. 737, affirmed 94 Fed. 630, 36 C. C. A. 430; *In re Sievers* (D. C.) 91 Fed. 366, affirmed *sub nom. Davis v. Bohle,* 92 Fed. 329, 34 C. C. A. 372; *In re Smith* (D. C.) 92 Fed. 135; *In re Etheridge Furniture Co.* (D. C.) 92 Fed. 329; *In re Richard* (D. C.) 94 Fed. 633; *In re Bruss-Ritter Co.* (D. C.) 90 Fed. 651; *In re Rouse Hazard Co.,* 91 Fed. 99, 33 C. C. A. 356; *Armour Packing Co. v. Brown,* 76 Minn. 465, 79 N. W. 522; *Parmenter Mfg. Co. v. Hamilton,* 172 Mass. 178, 51 N. E. 529, 70 Am. St. Rep. 258; *Mauran v. Crown C. L. Co.,* 23 R. I. 324, 50 Atl. 331; *Harbaugh v. Castello,* 184 Ill. 116, 56 N. E. 363, 75 Am. St. Rep. 147.

Throughout these cases the words "supersede" and "suspend" are interchangeably used as meaning the same thing; and some-

times the term "suspend the operation" is used as the same thing. In view of the fact that the congressional act of June 11, 1906, superseded only, as hereinbefore specified, the territorial statute, and that, too, in a respect in which it must have been understood that the anticipated state would desire the harmony and uniformity thus destroyed, we think the act of Congress can be held to have done no more than supersede the territorial law by staying or suspending its operative effect, pending the adoption of our Constitution. It will be kept in mind, also, that the terms of our territorial statute were broad enough to give, in addition to all other cases of wrongful death, a right of action for death wherever the act of Congress of June 11, 1906, would so give, except in case of slight contributory negligence or assumption of risk; and, in so far as the act of Congress merely gives the decedent's personal representative a right of action for the benefit of the former's widow and children, the two statutes are, in effect, identical, so that the latter statute gave no new territorial right, but was affirmative or cumulative, and continued in force the former statute to that extent. *U. S. v. Barnes,* 222 U. S. 513, 32 Sup. Ct. 117, 56 L. Ed. 291; *Hendrix v. U. S.,* 219 U. S. 79, 31 Sup. Ct. 193, 55 L. Ed. 102; *Great Northern R. Co. v. U. S.,* 208 U. S. 452, 28 Sup. Ct. 313, 52 L. Ed. 567.

Again, we have seen the federal act does not purport to give a cause of action to any person or the representative of any person injured while employed by a carrier engaged solely in intrastate commerce, but was limited to such employees as were employed only in interstate commerce. In the case of *Sturgis et al. v. Spofford,* 45 N. Y. 446, Church, C. J., delivering the opinion of the court in the second paragraph of the syllabus states:

"An act of Congress upon a subject within its jurisdiction, but upon which there has been state legislation, does not have the same effect upon the latter as would its repeal. Such act merely indicates the intention of Congress, from that time, to

assume the exercise of the powers conferred by the federal Constitution. The state law becomes from that time inoperative, but is not repealed; the repeal of the act of Congress would leave the state law in full force." *Henderson v. Spofford et al.,* 3 Daly (N. Y.) 361.

In the case of *Hearn v. Brogan,* 64 Miss. 334, 1 South. 246, the Supreme Court of Mississippi, speaking through Justice Campbell, stated:

"We assume that an election has been held in Clay county under the act of 1886, and that it resulted in favor of the sale of liquors, because the record shows an attempt to comply with that act, which would be inappropriate if such election had not been held. This being so, the Code, and amendments, as further amended by the act of 1886, constitute the law applicable. It is not true that an election under the late law abrogates the former law. If the result is against the sale, the former law is thereby suspended for the time, and the new law governs, with its provisions and penalties for its violation; but, if the result is for the sale, the former law remains in full force, modified by the new as to the terms on which license may be obtained.  *  *  *  There is no express repeal of former laws by the late act, and, as repeals by implication are never favored, the new law must be held to displace or suspend the former only to the extent of inconsistency between them. There is nothing in the latter enactment inconsistent with the continued operation of former statutes, except as stated above in this opinion."

In the case of *Winterton et al. v. State,* 65 Miss. 238, 3 South. 735, the same court, speaking through Campbell, J., concurring, said:

"The repeal of a statute is a remission of penalties inflicted by it, because of the absence of authority to punish when the law giving it has ceased to exist. But where a law is not repealed, and is merely suspended, it still has vitality to authorize punishment for its violation before its suspension. A repeal makes the law as if it had never been. Suspending its operation for a time leaves it operative as to the past and in all respects

wherein it is not abrogated by the new statute. A repealed statute is dead, and no sting can be inflicted by it, but one which still lives, although displaced for a time, as to its full effect, is not without power to vindicate its infraction before its suspension. Being still a law, there is no want of authority to punish under it for such violations of it."

Should we hold that the federal act repealed the territorial statute, instead of simply suspending its operative force, then when the federal act was rejected by the Constitution, which would have the effect to repeal that act, the territorial law would immediately become operative. It is a well-settled rule at common law that, when a repealing statute is itself repealed, the first statute is revived, without any formal words for that purpose, in the absence of a contrary intention, expressly declared. 36 Cyc. 1099; Lewis' Sutherland, Stat. Const. secs. 282, 288. From the point of view of the territory, the act of Congress was in the nature of an exception of a part of the subject from a general rule expressed in the territorial statute; and the rejection of the exception instantly left the excepted part of the subject within the operative effect of such general rule. Therefore the territorial statute in question was in force, according to its terms, when our Constitution was adopted, and was adopted by the latter as applicable to the whole subject of wrongful death. The quoted sections of the former territorial statutes have, since statehood, been frequently acted and relied upon as wholly valid; and we believe the bench and bar of this state have heretofore uniformly regarded the same as wholly valid and fully in force to the extent of its terms.

The third and last question presented is as to whether this case, as tried and as shown from the record, comes within the provisions of the act of Congress of April 22, 1908 (chapter 149, 35 Stat. 65; U. S. Comp. St. 1913, secs. 8657-8665), which in part reads as follows:

"That every common carrier by railroad while engaged in

commerce between any of the several states or territories,   *   *   *
shall be liable in damages to any person suffering injury while
he is employed by such carrier in such commerce, or, in case
of the death of such employee, to his or her personal represen-
tative, for the benefit of the surviving widow or husband and
children of such employee; and, if none, then of such employee's
parents; and, if none, then of the next of kin dependent upon
such employee, for such injury or death resulting in whole or
in part from the negligence of any of the officers, agents, or
employees of such carrier, or by reason of any defect or insuffic-
iency, due to its negligence, in its cars, engines, appliances,
machinery, track, roadbed, works, boats, wharves, or other equip-
ment."

This act gives a right of action only to the personal repre-
sentatives of the deceased, and in no event to the beneficiaries
for whom such personal representatives are authorized to sue;
and if the facts bring this case within the purview of this act,
and the defendants have not waived their right to rely upon
same, plaintiffs cannot maintain this action.

As we have seen, and as the record clearly shows, this case
was tried in the lower court by both parties on the theory that
it was prosecuted under sections 5281 and 5282, Rev. Laws 1910,
and there is nothing in the record to indicate that either party
suggested, or even thought, that the case was controlled by the
act of Congress referred to, *supra*. The first time there was
any effort made to interpose as a defense this act of Congress
was after the case had reached this court. It is, in effect, ad-
mitted by counsel for defendants in their various briefs that this
question was not called to the attention of the trial court, except
by the demurrer. It is insisted that the second ground of de-
murrer, that plaintiffs have no legal capacity to sue, raises this
question. The effect of the demurrer must be tested by the
sufficiency of the petition. The authorities seem to be practically
uniform that this ground of demurrer has reference to the legal
disability of the plaintiff, such as infancy, idiocy, or coverture;

and does not raise the question here involved. *Dewey v. Stall,* 91 Ind. 173; *Winfield Town Co. v. Maris,* 11 Kan. 128; *Littleton v. Burgess,* 16 Wyo. 58, 91 Pac. 832, 16 L. R. A. (N. S.) 49; *Weidner v. Rankin,* 26 Ohio St. 522; *Buckingham v. Buckingham,* 36 Ohio St. 69; *Farrell v. Cook,* 16 Neb. 483, 20 N. W. 720, 49 Am. Rep. 721; Bliss Code Plead. (2d Ed.) 407-409; *Haskins v. Alcott,* 13 Ohio St. 210; *Hunt v. Monroe,* 32 Utah, 428, 91 Pac. 269, 11 L. R. A. (N. S.) 249; *Jantzen v. Emanuel Baptist Church,* 27 Okla. 473, 112 Pac. 1127, Ann. Cas. 1912C, 659. On a demurrer, the sufficiency of the petition will be tested by the state law, unless the petition itself shows that the plaintiff is relying upon the federal act or that the federal act is applicable. *M., K. & T. Ry. Co. v. Neaves* (Tex. Civ. App.) 127 S. W. 1090; *M., K. & T. Ry. Co. v. Hawley* (Tex. Civ. App.) 123 S. W. 726.

Holding, as we have, that the territorial law governing the subjects of a right to sue, where death ensues by virtue of the wrongful act of another, was adopted by the Constitution and was in force at the time of the institution of this suit, it cannot be doubted, that plaintiffs' petition stated a good cause of action under said provision of the law. In fact, we do not understand counsel for defendant question the sufficiency of the petition under the state law. Had plaintiff sued as administratrix to recover under the federal statute of April 22, 1908, in a federal court, and had otherwise alleged the facts as they are set out in her petition, it would have been subject to a general demurrer. Or, even had she sought to recover under said act in the state court under this petition, suing as administratrix, the petition would have been subject to dismissal on a general demurrer.

Can the defendants now for the first time in this court, when the record does not so show, insist that this case is controlled by the act of Congress, *supra?* We are of the opinion that they cannot. This has been the uniform holding of this

court, as will be disclosed by the following cases: *Harris v. First Nat. Bank,* 21 Okla. 189, 95 Pac. 781; *Checotah et al. v. Hardridge et al.,* 31 Okla. 742, 123 Pac. 846; *Queen Ins. Co. v. Cotney et al.,* 25 Okla. 125, 105 Pac. 651; *Wattenbarger v. Hall,* 26 Okla. 815, 110 Pac. 911; *St. L. & S. F. Ry. Co. v. Key,* 28 Okla. 769, 115 Pac. 875; *Perry Water, Light & Ice Co. v. City of Perry,* 29 Okla. 593, 120 Pac. 582; *C., R. I. & P. Ry. Co. v. McBee,* 145 Pac. 331 (decided at this term).

This is also the uniform holding of the Supreme Court of the United States. In the case of *Louisville & N. R. Co. v. Woodford et al.,* 234 U. S. 46, 34 Sup. Ct. 739, 58 L. Ed. 1202, Mr. Justice Day, delivering the opinion of the court, discussing this proposition said:

"The case was taken by appeal to the Court of Appeals of Kentucky. After submission of the case to that court, the defendant filed a supplemental brief, urging the application of the law of the case of *Adams Exp. Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, and further insisted upon such application in its brief in reply to the plaintiff's reply brief. The Court of Appeals noticed that the claim that the law of the Croninger Case controlled was first suggested by defendant in its supplemental brief, after submission of the case to that court, and that the case had been tried under the rule of law in Kentucky that a contract relieving a carrier from its common-law liability and limiting recovery to less than the value of the property carried is in violation of the Kentucky Constitution, and held that it was elementary that questions not raised in the trial court in an appropriate way, which by the Code of Practice of Kentucky is in writing, would not be considered on appeal, and, after detailing the proceedings in the trial court, concluded that no federal question had thus been made. The defendant, by petition for rehearing, again insisted that the federal question had been properly presented, but the Court of Appeals, admitting that state courts must take judicial notice of acts of Congress and that it was not essential that the federal question should have been raised in any special form in the trial court, held that the facts on which such ques-

tion rested must be presented in the record. * * * That the defendant was entitled to make a defense under the act to regulate commerce, as amended (Act June 29, 1906, 34 Stat. at L. 584, c. 3591; U. S. Comp. Stat. 1913, sec. 8563 *et seq.*), is evidently an afterthought. The case was tried upon the theory that the Kentucky Constitution and statutes were controlling, and it was not until after the decision of *Adams Exp. Co. v. Croninger, supra,* that an attempt was made to claim the benefit of the bill of lading based upon schedules filed with the Interstate Commerce Commission. * * * No pleading was filed by the defendant alleging compliance with the act to regulate commerce by the filing of schedules containing the limitation as to the liability upon which reliance is now placed. As we have already said,. the record discloses that at the trial the defendant, instead of relying upon the limited liability now claimed, entirely ignoring such limitation, itself asked and obtained an instruction that, if the jury should find for the plaintiff, it should fix the damages in such sum as would represent the loss suffered. Of course, the request to give this instruction was entirely inconsistent with the claim of limited liability under the federal statute. If a federal question can be said to be involved at all, it was introduced into the record upon the argument of the motion for a new trial. * * * The decisions of this court not only have repeatedly held that a federal right, in order to be reviewable here, must be set up and denied in the state court, but nave often held that such claim of denial is not properly brought to the attention of this court where it appears that the state court declined to pass upon the question because it was not raised in the trial court, as required by the state practice. *Schuyler Nat. Bank v. Bollong,* 150 U. S. 85, 14 Sup. Ct. 24, 37 L. Ed. 1008; *Erie R. Co. v. Purdy,* 185 U. S. 148, 22 Sup. Ct. 605, 46 L. Ed. 847: *Layton v. Missouri,* 187 U. S. 356, 23 Sup. Ct. 137, 47 L. Ed. 214."

In the case of *Chicago, Indianapolis & L. Ry. Co. v. Hackett,* 228 U. S. 559, 33 Sup. Ct. 581, 57 L. Ed. 966, Mr. Justice Lurton, speaking for the court, said:

It is then assigned as error that the court below erred in not holding that the Indiana statute had been superseded by the federal Employers' Liability Act of June 11, 1906 (34 Stat.

at L. 232, c. 3073; U: S. Comp. Stat. Supp. 1911, p. 1316).
It does appear in one or more of the counts of the plaintiff's
declaration that the railroad company was engaged in operating
a railroad extending into two or more states, and such was the
evidence. The first count might be said to declare upon the
liability of the company under the act of 1906. Upon that
ground the case was removed to the Circuit Court of the United
States. But that court remanded it to the state court. There-
upon defendant demurred to the first count, and the demurrer
was sustained. No exception was saved, and no error assigned
either in the state court or in this. In no other way was any
claim set up or asserted under that federal act, nor did the state
court make any ruling as to the effect of that act upon the Indiana
statute, and the judgment of the Illinois court was rested wholly
upon the Indiana statute. Not having been specially set up in
the state court and there passed upon, it is obvious that the
point has not been saved."

The court held that the Employers' Liability Act of June
11, 1906, was unconstitutional and void.

Thus, we hold that both parties having tried this case on the
theory that the state statute governed and no law of Congress
or federal question having been suggested to the trial court, and
the point being first raised in this court, and there being nothing
in the record bringing the case within the purview of that law,
defendants cannot now be heard to insist that the state law does
not govern this case.

From the foregoing, the judgment of the trial court must
be affirmed. It is so ordered.

All the Justices concur.